IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **BEVERLY BALLARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **10 C 1740** |
| | ) | |
| **CHICAGO PARK DISTRICT,** | ) | **Judge Edmond E. Chang** |
| | ) | |
| **Defendant.** | ) | |

**LOCAL RULE 56.1 STATEMENT OF FACTS SUBMITTED IN SUPPORT OF CHICAGO <u>PARK DISTRICT'S MOTION FOR SUMMARY JUDGMENT</u>**

The Defendant Chicago Park District ("Park District" or "Defendant"), in compliance with Local Rule 56.1 submits the following statement of facts in support of its motion for summary judgment on Plaintiff Beverly Ballard's ("Ballard" or "Plaintiff") Complaint brought under the Family Medical And Leave Act of 1993 (FMLA), *29 U.S.C. § 2601 et seq.*

## PRELIMINARY STATEMENT

### Parties

Plaintiff: Beverly Ballard, an individual.

Defendant: Chicago Park District, a local public entity under Illinois law.

### Venue And Jurisdiction

Claims: This Court has jurisdiction for claims brought under Family Medical And Leave Act of 1993 (FMLA), *29 U.S.C. § 2601 et seq.*, pursuant to *28 U.S.C. § 1331.* Venue is proper under *28 U.S.C. § 1391 (B)* because Ballard resides in Chicago and because all relevant actions occurred in Chicago, Illinois.

(Tab F - ¶¶ 1-4)

## FACTS IN RECORD[1]

### The Park District's Department Of Beaches And Pools And Beverly Ballard

Statement of Fact ("S.F.") 1: The Chicago Park District is a local public entity under Illinois law. *70 ILCS 1505/1.01 et seq.* (Tab F – Answer ¶ 5) It offers recreational facilities and activities, including swimming facilities with lifeguards provided through its Department of Beaches and Pools. (Tab E – Excerpts from the Deposition of Janet McDonough ("McDonough Dep.") p. 6; Tab B – Excerpts from the Deposition of Eric Fischer ("Fischer Dep.") pp. 7-8)

S.F. 2: In 2007 and in 2008, Janet McDonough was the Manager of Beaches and Pools, which placed her in overall charge of staff and programming. (Tab E – McDonough Dep. p. 6) In 2007 and in 2008, Eric Fischer was the Assistant Manager of Beaches and Pools, which gave him operational responsibility for the day-to-day operation of the Department of Beaches and Pools – a responsibility that gave him authority to approve time sheets and to grant hourly Natatorium Instructors personal-days leave time when the employee had such time available. However, he could not approve FMLA leave requests. (Tab B – Fischer Dep. pp. 7-10, 15, 18, 39 70-71)

S.F. 3: Fischer also had responsibility to make certain that Park District swimming pools had adequate lifeguard coverage to protect the safety of patrons using those pools. Leaving a pool without adequate lifeguard coverage posed a serious safety hazard for patrons using a pool. (Tab B – Fischer Dep. p. 37)

S.F. 4: Ballard began working for Park District in 1983 as a lifeguard and assumed other

1 Exhibits in support of Defendant's Statement of Undisputed Facts are attached hereto and referenced herein as "(Tab ___)."

positions over the years, including that of Hourly Natatorium Instructor at all times relevant to this case. In this position, she accumulated for leave time personal days and sick time, but not vacation days. (Tab A – Excerpts from the Deposition of Beverly Ballard ("Ballard Dep.") p. 138; Tab B – Fischer Dep. pp. 37-38, 65)

**Pre-October 2007 FMLA Procedures At The Park District**

S.F. 5: Beka Reierson was the Park District's Director of Human Resources in 2007 and 2008. (Tab D – Excerpts from the Deposition of Rebecca Reierson ("Reierson Dep.") p. 5) Mary Ann Rowland was the Park District's Human Resources Manager responsible for discipline and for approval of FMLA leave requests for Ballard after September 2007. (Tab C – Excerpts from the Deposition of Mary Ann Rowland ("Rowland Dep.") p. 13) Only the Department of Human Resources could approve FMLA leave. (Tab D - Reierson Dep. pp. 17, 36, 38, 40)

S.F. 6: Before October 2007, the Park District used one set of Instructions on the Park District's procedures to obtain FMLA leave and paperwork that had to be completed before the Department of Human Resources would approve FMLA leave (First Instructions and Application). (Tab D - Reierson Dep. pp. 8-9, 37; Tab A – Ballard Dep. pp. 48-49, 82, Tab G)[2]

S.F. 7: Up to October 2007, the First Instructions and Application provided that all requests for FMLA leave should follow the following procedure:

> An employee must notify his/her immediate supervisor of the need for a Family Medical leave of Absence (FMLA). The employee must complete an FMLA Acknowledgement of Responsibilities and submit the form along with appropriate documentation to request and obtain

2 Tab G contains an email sent by the Park District requesting Plaintiff's counsel to confirm that the attached pdf document was an accurate version of the documents that Plaintiff submitted after her deposition that she alleged to have received in 2004 and 2005 along with her receipt of FMLA certification documents from the Park District as referenced in her deposition (pp. 48-19, 82 et al.), a three-page copy of the documents (Bates Stamped 310-312), and a confirmation email from Plaintiff's counsel.

> approval for an FMLA Leave. The employee must submit to the Human Resources Department the Medical Certificate within fifteen (15) calendar days of the employee's receipt of the Acknowledgement.

(Tab D - Reierson Dep. pp. 7-8; Tab C – Rowland Dep. pp. 11-12, Exs. 2, 19, 21)

S.F. 8: The First Instruction and Application provided that any employee seeking FMLA must provide the following notice:

> The employee must provide notice of his/her intended FMLA Leave or need to be off for an FMLA qualifying reason as soon as possible. When leave is foreseeable, the employee must give at least 30 days advance notice and complete the FMLA Acknowledgement. If a 30-day notice is not possible, then the employee must provide notice and complete the FMLA Acknowledgment as soon as practicable (i.e., usually within one or two business days from when the need for the leave becomes known to the employee). Failure to provide notice and complete the Acknowledgement as required, may result in delay of approval and/or discipline.

(TAB A – Ballard Dep. pp. 48-49, 79-89, Tab G)

S.F. 9: In September 2004, the Park District provided Ballard with a copy of the First Instructions and Application when she sought FMLA leave for what she claimed was her own qualifying psychological problem: "Depressive Disorder." Ballard completed the Medical Certificate on September 14, 2004 and submitted it to the Department of Human Resources for approval in compliance with the First Instructions and Application. (Tab A – Ballard Dep. pp. 56, 59-60, 70-71, 73, 75-80, 94, Ex. 2)

S.F. 10: On or about December 2005, the Park District provided Ballard with a First Instructions and Application when she sought to take FMLA leave to provide care for her mother for her serious medical condition. Ballard completed the required Medical Certificate on December 27, 2005 and submitted it to the Department of Human Resources for approval in compliance with the

First Instructions and Application. (Tab A – Ballard Dep. p. 87, Ex. 3)

S.F. 11: The First Instructions that Ballard received when she completed her first request for FMLA leave in 2004 for herself and for her mother in 2005 stated that written medical certification had to be submitted to Department of Human Resources and that the Department had to approve FMLA leave requests. (Tab A – Ballard Dep. pp. 38-40, 80, Ex. 2, Tab G)

**The Park District's FMLA Leave Request Procedures Starting October 2007**

S.F. 12: In October 2007, the Department of Human Resources issued a revised set of Instructions and Application for FMLA (Second Instructions and Application). (Tab D - Reierson Dep. pp. 9, 41-42, Ex. 1) This October Second Instructions and Application did not change any significant requirement for requesting and receiving FMLA leave. (Tab D - Reierson Dep. p. 9)

S.F. 13: Under the Second Instructions and Application in effect in January 2008, neither Eric Fischer nor Janet McDonough had the authority to approve FMLA leave. (Tab E – McDonough Dep. pp. 8, 21; Tab D – Reierson Dep. p. 37-38)

S.F. 14: The Second Instructions and Application advised those seeking FMLA leave as follows:

> PLEASE READ THE INCLUDED FAMILY MEDICAL LEAVE ACT (FMLA) RIGHTS AND RESPONSIBILITIES AND THE FMLA REQUIREMENTS CAREFULLY. TO APPLY FOR FMLA LEAVE, FILL OUT THE ATTACHED FMLA REQUEST FORM, AND RETURN IT TO YOUR HUMAN RESOURCES MANAGER.

(Tab D - Reierson Dep. p. 9, 41-42, Ex. 1; Tab A – Ballard Dep. Ex. 1) (Capitals in original)

S.F. 15: The Second Instructions and Application provides the following notice requirements that employees must give when requesting FMLA leave:

> You must provide notice of your intended FMLA leave or your need to be off for a FMLA qualifying reason as soon as possible. When leave is foreseeable, you must give at least 30 days advance notice and complete the FMLA Request Form. If a 30-day notice is not possible you must provide notice and complete the FMLA Request Form as soon as practicable (i.e., *usually within one or two business days from when the need for the leave becomes known).* Failure to provide notice and complete the FMLA Request Form required, may result in delay or denial of approval and/or discipline. (Italics in original).

(Tab D - Reierson Dep. pp. 40-41, Ex. 1; Tab A - Ballard Dep. Ex. 1)

S.F. 16: Based on her previous two written FMLA submissions for herself in 2004 and for her mother in 2005, Ballard knew on December 19, 2007 that requests for FMLA leave had to be submitted in writing to the Department of Human Resources. (Tab A - Ballard Dep. pp. 38-40, 80, Exs. 2, 3) However, Ballard never sought to obtain the Second Instructions and Application and to submit completed documents to the Department of Human Resources, but instead faxed a regular leave request form to Eric Fischer on January 15, 2008. (Tab A - Ballard Dep. pp.109, 149, & 120-132)

**Ballard's Knowledge And Actions**
**About Seeking Leave For The Las Vegas Trip**

S.F. 17: The Second Instructions and Application provided the procedures for FMLA leave requests that Ballard was expected to follow when she applied for any FMLA leave in December of 2007 and January of 2008. (Tab D - Reierson Dep. pp. 9, 41-42, Ex. 1; Tab A - Ballard Dep. Ex. 1)

S.F. 18: Before December 19, 2007, Sarah Ballard signed a contract with the Fairygodmother Foundation granting her wish for a trip to Las Vegas "in November 2007" and providing that Beverly Ballard would accompany her on this trip. (Tab A - Ballard Dep. pp. 154, 157, 159, Ex. 9)

S.F. 19: By at least December 19, 2007, Ballard knew that her mother and she were going on

a trip to Las Vegas between January 21, 2008 and January 26, 2008. (Tab A - Ballard Dep. pp. 132-133, 137-138, 152, 156, Exs. 7B, 7D)

S.F. 20: Ballard did not provide any written request for FMLA leave – including documentation required by and provided with forms in the Second Instructions and Application to the Department of Human Resources – at least 30 days before she was scheduled to accompany her mother to Las Vegas on January 21, 2008. (Tab A - Ballard Dep. pp. 136-137)

S.F. 21: Ballard did not provide any written request for FMLA leave – including documentation provided in and required by the Second Instructions and Application to the Department of Human Resources – *"within one or two days from when the need for the leave becomes known,"* which at a minimum would have been on December 19, 2007. (Tab A - Ballard Dep. pp. 136, 137, Exs. 7A, 7C) (*Italics* in original).

S.F. 22: Between December 19, 2007 and January 15, 2008, nothing prevented Ballard from submitting to her Human Resources, Manager Mary Ann Rowland, the written documentation provided in the Second Instruction and Application when she sought FMLA leave for the January 21, 2008 Las Vegas trip. (Tab A - Ballard Dep. pp. 136-137)

S.F. 23: Ballard did not submit what she claims was a request for FMLA leave to accompany her mother on FMLA eligible leave for a trip to Las Vegas until she faxed three documents to Eric Fischer on January 15, 2008, which was six days before she was scheduled to leave on the trip. (Tab A - Ballard Dep. 136, 137, Exs. 7A, 7C) Before leaving on January 21, 2008, Ballard herself never submitted any FMLA leave request to the Department of Human Resources. (Tab A - Ballard Dep. pp. 109, 149, 120-132)

S.F. 24: The three documents that Ballard faxed to Eric Fischer consisted of the following:

1) A regular Park District leave request form on which in the original of the faxed copy showed that Ballard was requesting FMLA leave, with a proviso from Ballard's immediate supervisor that the swimming pool "need[ed] coverage Sunday Jan 27, 2008;" 2) a handwritten note directed to Eric Fischer stating that the Fairygodmother Foundation had granted her mother and her a trip to Las Vegas, but the note did not state specifically that Ballard had to accompany her mother to provide necessary care and comfort for her on the trip; and 3) a December 19, 2008 letter from the Fairygodmother Foundation to Sarah Ballard confirming that it had already granted her wish by attaching "a copy of the wish agreement that [she] and [a representative of the Foundation] have signed." (Tab A - Ballard Dep. pp. 136-137, Exs. 7A, 7C)

S.F. 25: The received copy of the standard request form that Ballard faxed to Eric Fischer was of such poor quality that Fischer understood this request to be a request for regular non-FMLA leave, and he denied it on January 15, 2008 for the following reason: "Not enough benefit time. Location not covered" on a note attached to the leave form. (Tab B – Fischer Dep. pp. 36-37, Ex. 12; Tab C – Rowland Dep. pp. 36-39, Ex. 7; Tab A - Ballard Dep. Ex. 7A)

S.F. 26: The regular Park District Leave Request Form that Ballard faxed to Eric Fischer on January 15, 2008 did not have the completed documents that were part of the Second Instructions and Application, including medical certification that Ballard's presence was necessary on the trip to care for her mother. (Tab A - Ballard Dep. pp. 136-137, Exs. 1, 7A, 7C)

S.F. 27: On or about January 15, 2008 someone from the Department of Beaches Pools – most likely Janet McDonough according to Human Resources Manager Mary Ann Rowland – passed Ballard's leave request form with the two attachments to Rowland. (Tab C – Rowland Dep. pp. 39-40, Exs. 7, 8, 9)

S.F. 28: When the Park District proposes to discipline an employee with serious discipline, including suspensions and terminations, the Park District serves a Notice of A Corrective Action Meeting ("CAM") where a Human Resources Manager and possibly other people will confront the employee with the charges and will give the employee an opportunity to explain or to refute the claim of wrongdoing. (Tab C – Rowland Dep. p. 21)

S.F. 29: Before Ballard submitted her written request for leave to go with her mother to Las Vegas on January 15, 2008, the Park District served Ballard with notice of a Corrective Action Meeting (CAM) set for January 3, 2008 to consider discipline against her for an unexcused absence that she had had unrelated to the Las Vegas trip on November 21, 2007. However Ballard did not appear at this meeting. (Tab C – Rowland Dep. pp. 22-23, 28)

S.F. 30: Before Ballard made her request for leave to go with her mother to Las Vegas on January 15, 2008, the Park District had on January 11, 2008 issued a Corrective Action Meeting (CAM) Notice set for January 17, 2008 to Ballard to consider discipline against her for another unexcused absence that she had had unrelated to the Las Vegas trip on December 11, 2007. (Tab C – Rowland Dep. pp. 29-30, 32)

S.F. 31: Ballard's Human Resources Manager Mary Ann Rowland presided over the CAM set for January 17th and because Rowland knew about Ballard's leave request for Las Vegas, she was prepared to discuss this leave request with her in addition to dealing with the preexisting unexcused absence. However, Ballard failed to appear at this CAM. (Tab C – Rowland Dep. pp. 32-33)

S.F. 32: After the January 17th CAM, Human Resources Manager Rowland denied Ballard's Leave Request for Las Vegas because "This isn't covered under [the] FMLA." (Tab C – Rowland Dep. p. 40) Rowland also recommended a one-day suspension for the December 11, 2007 absence,

but did not issue a formal Notice of Disposition. (Tab C – Rowland Dep. p. 32, Ex. 6)

S.F. 33: After the January 17th CAM, Rowland within the next day or so telephoned Ballard to inform her that her request for FMLA leave was denied. (Tab C – Rowland Dep. pp. 40, 42)

S.F. 34: When Ballard and her mother left Chicago on January 21, 2008, Ballard knew that her January 15, 2008 request for leave to take this trip had been denied, but proceeded on this trip regardless. (Tab A - Ballard Dep. pp. 118-20, 145-47, Ex. 7A; Tab C – Rowland Dep. p. 42; Tab D - Reierson Dep. p. 16)

S.F. 35: On February 14, 2008, Rowland issued another Corrective Action Meeting (CAM) Notice to Ballard set for February 28, 2008 to consider discipline against her for her for three disciplinary infractions: 1) unauthorized absences for January 21-24 and 27, 2008; 2) falsification of her time sheet for January 29, 2008; and 3) failure to comply with written polices of her department on January 19, 2008. (Tab C – Rowland Dep. pp. 57-59; Tab A - Ballard Dep. Ex. 20)

S.F. 36: After the February 28, 2008 CAM, the Park District on March 21, 2008 issued a Disciplinary Meeting Disposition terminating her employment only for violation of the Code of Conduct, including but not necessarily limited to the unauthorized absences on January 21-24 and 27. The Disposition also stated, "You were absent these days in defiance of advisories from your supervisor that your request was denied." (Tab A - Ballard Dep. Ex. 21)

**The Trip To Las Vegas Did Not Involve Any Professional Palliative Or Curative Medical Care, Therapy Or Treatment**

S.F. 37: The Fairygodmother Foundation was a not-for-profit charitable organization that granted end-of-life wishes to adults who were facing terminal illnesses. (Tab A - Ballard Dep. pp. 172-173; Ex. 12) Before December 19, 2007, Sarah Ballard made a request to the Fairygodmother

Foundation to take a trip to Las Vegas in January 2008. (Tab A - Ballard Dep. pp. 154, 157, 159, Ex. 9) The Fairygodmother Foundation granted Sarah Ballard's request for a trip to Las Vegas no later than December 19, 2007. (Tab A - Ballard Dep. pp. 132-133, 137-138, 151-152, 156, Exs. 7B, 7D)

S.F. 38: In a January 21, 2008 letter about its wish granting Sarah Ballard's trip to Las Vegas, the Fairygodmother Foundation stated, "In the process of granting wishes, Fairygodmother Foundation provides an opportunity for peace, closure, and cherished memories." (Tab A - Ballard Dep. Ex. 12)

S.F. 39: Sarah Ballard and Beverly Ballard traveled to Las Vegas on January 21, 2008 and returned to Chicago on January 29, 2008 although the Park District had not approved Ballard's leave request. (Tab A - Ballard Dep. pp. 145-147, Ex. 7A; Tab C – Rowland Dep. p. 42)

S.F. 40: Horizon Hospice is an organization that provides health monitoring and palliative support and comfort for patients facing end-of-life issues. In 2007 and 2008, Horizon Hospice provided Sarah Ballard with in-home hospice services at her Chicago home through home visits by a nurse practitioner and other professionals. (Tab A - Ballard Dep. pp. 70-71, 189-190, Ex. 5, Exs. 13, Ex. 16)

S.F. 41: While Sarah Ballard and Beverly Ballard were in Las Vegas, the Fairygodmother Foundation arranged for their stay at the Monte Carlo Hotel. (Tab A - Ballard Dep. pp. 201-202)

S.F. 42: While Sarah Ballard was in Las Vegas, she gambled by playing slot machines every day during her stay. (Tab A - Ballard Dep. pp. 205-206)

S.F. 43: While Sarah Ballard was in Las Vegas, she went shopping at the mall and down the Strip. (Tab A - Ballard Dep. pp. 204-205)

S.F. 44: While Sarah Ballard was in Las Vegas, she enjoying watching people come and go.

(Tab A - Ballard Dep. p. 205)

S.F. 45: While Sarah Ballard and Beverly Ballard were in Las Vegas, they were able to eat at some of the better restaurants there, including Hard Rock Café and Paris, and they ordered room service. (Tab A - Ballard Dep. pp. 204-205)

S.F. 46: While Sarah Ballard and Beverly Ballard were in Las Vegas, the Fairygodmother Foundation paid for most of their travel and other expenses. (Tab A - Ballard Dep. p. 204, Ex. 10)

S.F. 47: When Sarah Ballard went to Las Vegas, she had no plans or appointments to receive any professional medical care, therapy or treatment for her heart condition. (Tab A - Ballard Dep. pp. 207-208)

S.F. 48: When Sarah Ballard was in Las Vegas, she received no planned professional medical care, therapy or treatment for her heart condition. (Tab A - Ballard Dep. pp. 206-208, Ex. 17)

S.F. 49: When Sarah Ballard was in Las Vegas, Horizon Hospice did not provide any services for her. (Tab A - Ballard Dep. pp. 204, 206-208)

S.F. 50: When Sarah Ballard went to Las Vegas, she had no plans to receive hospice-type services while she was there. (Tab A - Ballard Dep. pp. 206-208)

S.F. 51: When Sarah Ballard was in Las Vegas, she did not receive any hospice-type services. (Tab A - Ballard Dep. pp. 206-208)

Dated: April 11, 2011

Chicago Park District

/s/ Brian J. Flores
Brian J. Flores
Counsel

Brian J. Flores (6296384)
Counsel
Nelson A. Brown, Jr. (3123202)
Senior Counsel
Law Department
CHICAGO PARK DISTRICT
541 N. Fairbanks Ct. 3rd floor
Chicago, IL 60611
(312) 742-4610

**CERTIFICATE OF SERVICE**

I, Brian J. Flores, an attorney, hereby certify that on April 11, 2011, I caused to be served a copy of the foregoing **Local Rule 56.1 Statement of Undisputed Facts**, in the above-captioned matter to be filed with the Clerk of the District Court and served on the parties of record, including those listed below, by operation of the Court's CM/ECF electronic filing system, addressed to:

Paul W. Ryan
The Law Offices of Eugene K. Hollander
230 W. Monroe
Suite 1900
Chicago, IL 60606
pryan@ekhlaw.com

Respectfully submitted,
Chicago Park District

By: /s/ Brian J. Flores
Brian J. Flores