EXHIBIT
1
Ballard
2-23-11
PENGAD 800-631-6989

# Chicago Park District
# Family and Medical Leave Act

**PLEASE READ THE INCLUDED FAMILY MEDICAL LEAVE ACT (FMLA) RIGHTS AND RESPONSIBILITIES AND THE FMLA REQUIREMENTS CAREFULLY. TO APPLY FOR FMLA LEAVE, FILL OUT THE ATTACHED FMLA REQUEST FORM, AND RETURN IT TO YOUR HUMAN RESOURCES MANAGER.**

## FMLA RIGHTS AND RESPONSIBILITIES

The Chicago Park District shall grant up to twelve weeks of job protected leave within a twelve-month period to an eligible employee for one or more of the following reasons:

1. The birth and care of the employee's child (expires 12 months after delivery).
2. The placement of a child with the employee for adoption or foster care (expires 12 months after placement).
3. The care of the employee's spouse, child, or parent, who has a serious health condition.
4. A serious health condition that makes the employee unable to perform his or her job.

To be eligible for FMLA, an employee must have worked for the Chicago Park District for at least 12 months and worked at least 1,250 hours in the previous 12 months. Time is calculated on actual time worked, not time paid but not worked, nor unpaid time.

Leave taken to care for a newborn or newly placed child must be taken continuously, unless otherwise agreed to by the Chicago Park District. Married couples, both employed by the Chicago Park District, will be entitled to a combined total of 12 weeks for a newborn or newly placed child.

Under certain circumstances, FMLA leave may be taken on an intermittent basis, or on a reduced leave schedule. There must be a medical need (as distinguished from voluntary treatments and procedures), and it must be that such medical need can be best accommodated through an intermittent or reduced leave schedule. Employees must advise the Chicago Park District when intermittent leave or leave on a reduced leave schedule is needed, as well as the reasons why such leave is needed, and any schedule of treatments, if applicable. Employees needing intermittent FMLA leave or leave on a reduced leave schedule must attempt to schedule their leave so as not to disrupt the employer's operations. The Chicago Park District may assign an employee to an alternative position with equivalent pay and benefits that better accommodates the employee's intermittent or reduced leave schedule.

The Chicago Park District will exercise its right to designate time off due to injury on or off duty or sickness as FMLA leave and will deduct that time from the employee's 12-week entitlement.

*All benefit time (sick days, personal days, and vacation days) must be used prior to placement on unpaid status.* Unless an employee's Collective Bargaining Agreement states otherwise, all F-Time must also be exhausted before placement in an unpaid status.

Ex. 1

The Chicago Park District requires all employees on a FMLA leave for longer than 30 days to return property and equipment belonging to the Chicago Park District on the day before the effective day of leave.

No employee shall be disciplined for taking an approved FMLA leave. The Chicago Park District may discipline an employee for failing to comply with the requirements and/or intent of FMLA, abuse of FMLA leave, and/or any other violation of Chicago Park District rules.

## FMLA REQUIREMENTS

In order to have your time off designated as leave under the Family Medical Leave Act you must follow the requirements outlined below:

You must complete a FMLA Request Form and present it to your Human Resources Manager.

You must provide notice of your intended FMLA leave or your need to be off for a FMLA qualifying reason as soon as possible. When leave is foreseeable, you must give at least 30 days advance notice and complete the FMLA Request Form. If a 30-day notice is not possible, you must provide notice and complete the FMLA Request Form as soon as practicable (i.e., *usually within one or two business days from when the need for the leave becomes known*). Failure to provide notice and complete the FMLA Request Form required, may result in delay or denial of approval and/or discipline.

You must submit all required documentation (Birth Certificate, Certificate of Legal Record of Placement, and/or completed Certificate of Health Care Provider) within 15 days. Your leave may be delayed until you submit the requested information. Failure to comply with the timely submittal of documentation may result in denial or discontinuation of FMLA leave.

You will be asked to re-certify your medical condition or intent to return to work every 45 days. However, THE CHICAGO PARK DISTRICT RESERVES THE RIGHT TO REQUEST RE-CERTIFICATION OF THE MEDICAL CONDITION OR ADDITIONAL MEDICAL OPINIONS AS IT DEEMS NECESSARY. ALL EMPLOYEEES ABSENT FOR FIVE OR MORE CONSECUTIVE DAYS MUST BRING EVIDENCE FROM THEIR PHYSICIAN OF THEIR FITNESS TO RETURN TO DUTY TO THEIR HUMAN RESOURCES MANAGER.

The Chicago Park District will maintain your health insurance coverage as if you were continuously in service for the duration of your approved FMLA leave provided you continue to pay your monthly contribution. **IF YOU ARE ON FMLA LEAVE IN A NO-PAY STATUS, YOUR EMPLOYEE CONTRIBUTION MUST BE PAID TO THE CHICAGO PARK DISTRICT VIA CHECK EACH PAY PERIOD TO MAINTAIN INSURANCE COVERAGE FOR MEDICAL, DENTAL, VISION AND LIFE INSURANCE ONLY.**

You will also be held responsible for making payments each pay period for any other voluntary or involuntary payroll deductions such as AFLAC, Bear Paw, Jefferson Pilot, Credit Union payments, garnishments or any other deduction typically taken from your check to the Chicago Park District. Failure to make the payments will cause your coverage to be suspended or cancelled.

If you fail to return from leave as required you must reimburse the Chicago Park District health insurance premiums paid on your behalf.

You are required to notify your Human Resources Manager at least two business days before you return to work. Any employee returning from FMLA leave for his or her own illness must obtain a release to return to work from his or her own physician. The Chicago Park District reserves the right to send an employee to a physician of the Chicago Park District's choosing to confirm the recommendation from an employee's physician.

You may apply for an extension of your leave pursuant to the Park District's Personnel Code or the applicable collective bargaining agreement by submitting a request in writing to your Human Resources Manager with reason and length of time requested, no later than 7 days prior to the end of your FMLA Leave.

Upon your return from FMLA leave, you will be restored to the same or equivalent position with the same pay, benefits, and terms and conditions of employment. However, a key employee, in the top 10% of all salaried Chicago Park District employees, may be denied restoration if necessary to avoid substantial and grievous injury to the Chicago Park District.

The Chicago Park District policy on secondary employment applies while an employee is on FMLA leave. Engaging in any occupation or employment while on FMLA leave without the prior notice and approval by the Chicago Park District may result in discipline including termination of employment. Employees must follow applicable secondary employment procedures.

If you choose to apply for benefits under the Park Employees Annuity & Benefit Fund during your absence which is not covered by benefit time, you must apply directly to the Pension Board. Their phone number is 312-553-9265.

**Please contact your Human Resources Manager if you have questions regarding the requirements, or your rights and responsibilities under the Family Medical Leave Act at 312-742-5220.**

Rev. HR Dept. 10/07

# CHICAGO PARK DISTRICT
# FAMILY AND MEDICAL LEAVE ACT
# REQUEST FORM

**Employee Name**________________________________________

**Social Security Number or Employee ID #**____________________________

**Region & Location**____________________ **Job Title** ____________________

**I HEREBY REQUEST A FMLA LEAVE OF ABSENCE FOR THE FOLLOWING REASON:**

____Birth or Care of a Newborn

____Placement of Child: Adoption or Foster Care

____Serious Health Condition of Employee

____Serious Health Condition of Spouse, Parent, or Child

**Date Requested to Start FMLA Leave** ____________________________

**Date Estimated to Return from FMLA Leave** ____________________________

Are you requesting intermittent FMLA leave? **YES** ☐ **NO** ☐

**If yes, please explain**________________________________________

Are you requesting a reduced leave schedule? **YES** ☐ **NO** ☐

**If yes, please explain**________________________________________

**I CERTIFY THAT I HAVE RECEIVED, UNDERSTAND, AND AGREE TO COMPLY WITH THE OBLIGATIONS STATED IN THE CHICAGO PARK DISTRICT FMLA NOTICE OF REQUIREMENTS AND RIGHTS AND RESPONSIBILITIES.**

Employee Printed Name________________________________

Signature________________________________

Date________________

**PLEASE RETURN THIS COMPLETED FORM TO YOUR HUMAN RESOURCES MANAGER**

| To be used by HR |
| --- |
| |

9/14/0

# Chicago Park District Medical Certificate
## (Family & Medical Leave Act of 1993)

**Part A.** *(To be filled out by the employee)*

Employee's Name Beverly Ballard ID. No. 102136

Home Address 11829 S. Ashland Phone 773 568 6008

Position Natatorium Instructor Work Location Beaches & Pools

Patient's Name *(If other than employee, indicate relationship.)* Beverly Ballard Myself

*If requested leave is to care for a seriously ill spouse, parent, son or daughter, please describe the nature, schedule and duration of the care you will provide:*

I hereby give the Chicago Park District Risk Management Department permission to contact my Health Care Provider to clarify and authenticate this certificate. In addition, I certify that the above information is true and correct.

Employee's signature [signature] Date 9/14/04

**Part B.** *(To be filled out by Physician, Practitioner or other Health Care Provider.)*

**EMPLOYEE IS PATIENT:** *(Complete Part C if patient is not the Employee.)*

Diagnosis Depressive Disorder
Stress/Anxiety

Date condition commenced 8/30/2004 Probable duration of condition until 9/29/2004

*Regimen of treatment prescribed including number of scheduled visits and general nature of treatment.*

Psychological counseling, stress management, rest

In your best medical opinion, is it **medically necessary** for the employee to leave work on a intermittent basis or work a reduced schedule? If so, please explain your conclusion and indicate the expected duration of the employee's intermittent or reduced schedule.

EXHIBIT 2
Ballard 2-23-11
PENGAD 800-631-6989

Check Yes or No on the lines below, as appropriate:

Is inpatient hospitalization of the employee required? ______ Yes ___X___ No

Is the employee able to perform the functions of his/her position? ______ Yes ___X___ No

*(Please review the attached job description or statement of the employee's essential job functions, or if neither is attached, please discuss with the employee his/her job duties before answering this question.)*

**Part C.** *(To be filled out by Physician, Practitioner or other Health Care Provider.)*

**PATIENT IS A SPOUSE, PARENT, SON OR DAUGHTER OF EMPLOYEE:**

Diagnosis ___Depress___

Date condition commenced ___8·30·04___ Probable duration of condition ___9·20·04___

Is inpatient hospitalization of the patient required? ______ Yes ___X___ No

Does (or will) the patient require employee's assistance for basic medical, hygiene, nutritional needs, safety or transportation?

______ Yes ______ No

*(If yes, please detail the type of care, specific days or hours of care, and other assistance required.)*

Type of Assistance ______

Days/hours of Assistance ______

Additional Information ______

Estimate of period of time the employee will need to care for the patient ______

**Part D.** *(To be filled out by physician, Practitioner or other Health Care Provider.)*

Signature of Physician [signature] Date 9/14/04

Physician's License Number 036065536

Print Name of Physician Dr Earl B. Thornton

Field of Medical Practice/Specialty F.M.

Address 8202 S. King Dr., Chicago IL 60619

Telephone Number 773-651-3747

Signature of Practitioner and/or Health Care Provider ______ Date ______

License Number (if any) ______

Print Name ______

Field of Medical Practice/Specialty ______

Address ______

Telephone Number ______

EXHIBIT 3 Ballard 2-23-11 PENGAD 800-631-6989

# Chicago Park District Medical Certificate (Family & Medical Leave Act of 1993)

**Part A.** *(To be filled out by the employee)*

Employee's Name: Beverly Ballard

Home Address: 11829 S. Ashland

ID. No. 102136

Position: Natatorium Instructor (H)

Phone: 1-773 568-6008

Work Location: Don Nash

Patient's Name *(If other than employee, indicate relationship.)* SARAH BALLARD

*If requested leave is to care for a seriously ill spouse, parent, son or daughter, please describe the nature, schedule duration of the care you will provide:*

I hereby give the Chicago Park District Risk Management Department permission to contact my Health Care Provide to clarify and authenticate this certificate. In addition, I certify that the above information is true and correct.

Employee's signature: [signature]

Date: 12-27-05

**Part B.** *(To be filled out by Physician, Practitioner or other Health Care Provider.)*

**EMPLOYEE IS PATIENT:** *(Complete Part C if patient is not the Employee.)* DNA

Diagnosis

Date condition commenced

Probable duration of condition

*Regimen of treatment prescribed including number of scheduled visits and general nature of treatment.*

In your best medical opinion, is it medically necessary for the employee to leave work on a intermittent basis or work a reduced schedule? If so, please explain your conclusion and indicate the expected duration of the employee's intermittent or reduced schedule.

**Part D.** *(To be filled out by physician, Practitioner or other Health Care Provider.)*

Signature of Physician X [signature] Date 12/09/08

Physician's License Number 036-055591

Print Name of Physician Dr. John Kelsey

Field of Medical Practice/Specialty Internal Medicine

Address ADVOCATE EVERGREEN HEALTH CENTER
9435 S. WESTERN AVENUE
CHICAGO, IL 60620

Telephone Number 773-238-0800

---

Signature of Practitioner and/or Health Care Provider ____________ Date ________

License Number (if any) ____________

Print Name ____________

Field of Medical Practice/Specialty ____________

Address ____________

Telephone Number ____________

Check Yes or No on the lines below, as appropriate:

Is inpatient hospitalization of the employee required? ______ Yes ______ No

Is the employee able to perform the functions of his/her position? ______ Yes ______ No

*(Please review the attached job description or statement of the employee's essential job functions, or if neither is attached, please discuss with the employee his/her job duties before answering this question.)*

**Part C.** *(To be filled out by Physician, Practitioner or other Health Care Provider.)*

**PATIENT IS A SPOUSE, PARENT, SON OR DAUGHTER OF EMPLOYEE:**

Diagnosis Congestive heart failure, Diabetes, severe cardiomyopathy AICD in Pacemaker, Gastroenteritis, Hypertension

Date condition commenced 2003 Probable duration of condition life long

Is inpatient hospitalization of the patient required? ✓ Yes ______ No

Does (or will) the patient require employee's assistance for basic medical, hygiene, nutritional needs, safety or transportation? ✓ Yes ______ No

*(If yes, please detail the type of care, specific days or hours of care, and other assistance required.)*

Type of Assistance Basic medical, hygiene, Nutritional needs, safety and transportation to and from doctor's office for medical appointments.

Days/hours of Assistance As needed by the Patient and for medical appointments with doctors/Specialist

Additional Information ______

Estimate of period of time the employee will need to care for the patient life long for the patient.

Certification of Health Care Provider
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

*(When completed, this form goes to the employee, **Not to the Department of Labor.**)*

OMB No.: 1215-0181
Expires: 09-30-2010

| 1. Employee's Name | 2. Patient's Name *(If different from employee)* |
|---|---|
| | |

3. Page 4 describes what is meant by a **"serious health condition"** under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check the applicable category.

(1)_______ (2) _______ (3) _______ (4)_______(5) _______ (6) _______ , or None of the above _______

4. Describe the **medical facts** which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

5. a. State the approximate **date** the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present **incapacity**[2] if different):

b. Will it be necessary for the employee to take work only **intermittently or to work on a less than full schedule** as a result of the condition (including for treatment described in Item 6 below)?

If yes, give the probable duration:

c. If the condition is a **chronic condition** (condition #4) or **pregnancy**, state whether the patient is presently incapacitated[2] and the likely duration and frequency of **episodes of incapacity**[2]:

EXHIBIT
4
Ballard
2-23-11
PENGAD 800-631-6989

[1] Here and elsewhere on this form, the information sought relates **only** to the condition for which the employee is taking FMLA leave.

[2] "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.



Form WH-380
Revised December 1999

Ex. 4

6. a. If additional **treatments** will be required for the condition, provide an estimate of the probable number of such treatments.

If the patient will be absent from work or other daily activities because of **treatment** on an **intermittent** or **part-time** basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

b. If any of these treatments will be provided by **another provider of health services** (e.g., physical therapist), please state the nature of the treatments:

c. **If a regimen of continuing treatment** by the patient is required under your supervision, provide a general description of such regimen (*e.g.*, prescription drugs, physical therapy requiring special equipment):

7. a. If medical leave is required for the employee's **absence from work** because of the **employee's own condition** (including absences due to pregnancy or a chronic condition), is the employee **unable to perform work** of any kind?

b. If able to perform some work, is the employee **unable to perform any one or more of the essential functions of the employee's job** (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

c. If neither a. nor b. applies, is it necessary for the employee to be **absent from work for treatment?**

8. a. If leave is required to **care for a family member** of the employee with a serious health condition, **does the patient require assistance** for basic medical or personal needs or safety, or for transportation?

b. If no, would the employee's presence to provide **psychological comfort** be beneficial to the patient or assist in the patient's recovery?

c. If the patient will need care only **intermittently** or on a part-time basis, please indicate the probable **duration** of this need:

Signature of Health Care Provider

Type of Practice

Address

Telephone Number

Date

**To be completed by the employee needing family leave to care for a family member:**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

Employee Signature

Date

A **"Serious Health Condition"** means an illness, injury impairment, or physical or mental condition that involves one of the following:

1. Hospital Care

**Inpatient care** (*i.e.*, an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity[2] or subsequent treatment in connection with or consequent to such inpatient care.

2. Absence Plus Treatment

(a) A period of incapacity[2] of **more than three consecutive calendar days** (including any subsequent treatment or period of incapacity[2] relating to the same condition), that also involves:

(1) **Treatment[3] two or more times** by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or

(2) **Treatment** by a health care provider on **at least one occasion** which results in a **regimen of continuing treatment[4]** under the supervision of the health care provider.

3. Pregnancy

Any period of incapacity due to **pregnancy**, or for **prenatal care**.

4. Chronic Conditions Requiring Treatments

A **chronic condition** which:

(1) Requires **periodic visits** for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

(2) Continues over an **extended period of time** (including recurring episodes of a single underlying condition); and

(3) May cause **episodic** rather than a continuing period of incapacity[2] (*e.g.*, asthma, diabetes, epilepsy, etc.).

5. Permanent/Long-term Conditions Requiring Supervision

A period of **Incapacity[2]** which is **permanent or long-term** due to a condition for which treatment may not be effective. The employee or family member must be **under the continuing supervision of, but need not be receiving active treatment by, a health care provider.** Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

6. Multiple Treatments (Non-Chronic Conditions)

Any period of absence to receive **multiple treatments** (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for **restorative surgery** after an accident or other injury, or for a condition that **would likely result in a period of Incapacity[2] of more than three consecutive calendar days in the absence of medical intervention or treatment**, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), and kidney disease (dialysis).

This optional form may be used by employees to satisfy a mandatory requirement to furnish a medical certification (when requested) from a health care provider, including second or third opinions and recertification (29 CFR 825.306).

*Note:* Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

[3] Treatment includes examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations.

[4] A regimen of continuing treatment includes, for example, a course of prescription medication (*e.g.*, an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition. A regimen of treatment does not include the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider.

**Public Burden Statement**

We estimate that it will take an average of 20 minutes to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

***DO NOT SEND THE COMPLETED FORM TO THIS OFFICE; IT GOES TO THE EMPLOYEE.***



*U.S. GPO: 2000-461-954/25505

Certification of Health Care Provider
(Family and Medical Leave Act of 1993)

U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division

(When completed, this form goes to the employee, **Not to the Department of Labor.**)

OMB No.: 1215-0181
Expires: 08-31-2007

1. Employee's Name
Beverly Ballard

2. Patient's Name *(If different from employee)*
Sarah Ballard

3. Page 4 describes what is meant by a **"serious health condition"** under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check the applicable category.

(1) ____ (2) ____ (3) ____ (4) ____ (5) ✓ (6) ____ , or None of the above ____

4. Describe the **medical facts** which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

Patient has a terminal diagnosis of end-stage CHF.

5. a. State the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present **incapacity**[2] if different):

Patient was admitted into hospice care program on 4/25/2006; Duration of condition depends on pt's life expectancy, which at this time is expected to be six months or less.

b. Will it be necessary for the employee to take work only **intermittently or to work on a less than full schedule** as a result of the condition (including for treatment described in Item 6 below)?

Employee's responsibilities in providing pt care will be intermittent, as needs for care & assistance will vary as patient declines.

If yes, give the probable duration:

c. If the condition is a **chronic condition** (condition #4) or **pregnancy**, state whether the patient is presently incapacitated[2] and the likely duration and frequency of **episodes of incapacity**[2]:

N/A

EXHIBIT
5
Ballard
2-23-11
PENGAD 800-631-6989

[1] Here and elsewhere on this form, the information sought relates **only** to the condition for which the employee is taking FMLA leave.

[2] "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.



Ex. 5

6. a. If additional **treatments** will be required for the condition, provide an estimate of the probable number of such treatments.

Pt is receiving palliative care services in her home; No treatments planned; All services being provided by Horizon Hospice.

If the patient will be absent from work or other daily activities because of **treatment** on an **intermittent** or **part-time** basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

N/A

b. If any of these treatments will be provided by **another provider of health services** (e.g., physical therapist), please state the nature of the treatments:

N/A

c. **If a regimen of continuing treatment** by the patient is required under your supervision, provide a general description of such regimen (*e.g.*, prescription drugs, physical therapy requiring special equipment):

N/A

7. a. If medical leave is required for the employee's **absence from work** because of the **employee's own condition** (including absences due to pregnancy or a chronic condition), is the employee **unable to perform work** of any kind?

N/A

b. If able to perform some work, is the employee **unable to perform any one or more of the essential functions of the employee's job** (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

N/A

c. If neither a. nor b. applies, is it necessary for the employee to be **absent from work for treatment**?

N/A

8. a. If leave is required to **care for a family member** of the employee with a serious health condition, **does the patient require assistance** for basic medical or personal needs or safety, or for transportation?

Patient does require assistance from others, + employee is the primary person supporting patient. Patient relies on employee for safety needs + transportation. Needs for personal care + medical care are expected to increase in the coming months as patient declines

b. If no, would the employee's presence to provide **psychological comfort** be beneficial to the patient or assist in the patient's recovery?

Psychological comfort care + support is an additional benefit that employee is able to offer to patient.

c. If the patient will need care only **intermittently** or on a part-time basis, please indicate the probable **duration** of this need:

Patient's needs for care may be intermittent, + times that employee will need to be absent from work will be best identified by patient + employee. Duration of these needs depends on patient's life expectancy - at this time, patient's life expectancy is projected to be less than six months.

X Lisa Shiers MD
Signature of Health Care Provider (Lindsay Wooster, LSW)

Hospice
Type of Practice

Horizon Hospice + Palliative Care
833 W. Chicago Ave
Chicago, IL 60622
Address

(312) 733-8900
Telephone Number

3/6/07
Date

**To be completed by the employee needing family leave to care for a family member:**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

Employee Ballard will have ~~to~~ provide care for her mother's by personal care + medical care transportation in the upcoming month's for lesson six months, she also need her schedule change back to sunday off and because Horizon Hospice dose not provide care person on sunday, theree foe Employee Ballard must

[signature]
Employee Signature

3/09/07
Date

Certification of Health Care Provider
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

*(When completed, this form goes to the employee,* ***Not to the Department of Labor.****)*

OMB No.: 1215-0181
Expires: 09-30-2010

1. Employee's Name
Beverly Ballard

2. Patient's Name *(If different from employee)*
Sarah Ballard

3. Page 4 describes what is meant by a **"serious health condition"** under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check the applicable category.

(1) ____ (2) ____ (3) ____ (4) ____ (5) X (6) ____ , or None of the above ____

4. Describe the **medical facts** which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

Pt is terminally ill; diagnosis of End-Stage CHF
Pt also has a past medical history of diabetes, hypertension, & coronary artery disease (has pacemaker)

5. a. State the approximate **date** the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present **incapacity**[2] if different):

Pt was diagnosed in early 2006, & referred for home hospice services in April, 2006. Anticipated duration of illness is 6 months or less, as pt is terminal

b. Will it be necessary for the employee to take work only **intermittently or to work on a less than full schedule** as a result of the condition (including for treatment described in Item 6 below)?

Employee may need to work intermittently in order to meet needs of pt. Pt's care needs will not always be predictable.

If yes, give the probable duration:
At this time, anticipated duration is 6 months or less; Pt's condition is re-evaluated every 2 months

c. If the condition is a **chronic condition** (condition #4) or **pregnancy**, state whether the patient is presently incapacitated[2] and the likely duration and frequency of **episodes of incapacity**[2]:

N/A

EXHIBIT
6
Ballard
2-23-11
PENGAD 800-631-6989

[1] and elsewhere on this form, the information sought relates **only** to the condition for which the employee is taking FMLA leave.

[2] "...ity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health treatment therefor, or recovery therefrom.



Form WH-380
Revised December 1999

6. a. If additional **treatments** will be required for the condition, provide an estimate of the probable number of such treatments.

No treatments being provided - palliative care services only being provided by Horizon Hospice. Comfort care & symptom management being emphasized at this time.

If the patient will be absent from work or other daily activities because of **treatment** on an **intermittent** or **part-time** basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

N/A

b. If any of these treatments will be provided by **another provider of health services** (e.g., physical therapist), please state the nature of the treatments:

N/A

c. **If a regimen of continuing treatment** by the patient is required under your supervision, provide a general description of such regimen (*e.g.*, prescription drugs, physical therapy requiring special equipment):

N/A

7. a. If medical leave is required for the employee's **absence from work** because of the **employee's own condition** (including absences due to pregnancy or a chronic condition), is the employee **unable to perform work** of any kind?

N/A

b. If able to perform some work, is the employee **unable to perform any one or more of the essential functions of the employee's job** (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

N/A

c. If neither a. nor b. applies, is it necessary for the employee to be **absent from work for treatment?**

N/A

8. a. If leave is required to **care for a family member** of the employee with a serious health condition, **does the patient require assistance** for basic medical or personal needs or safety, or for transportation?

Pt does rely on employee for basic medical & personal needs. Employee is pt's only ~~surviving~~ surviving child & is responsible for meeting pt's care needs.

b. If no, would the employee's presence to provide **psychological comfort** be beneficial to the patient or assist in the patient's recovery?

N/A

c. If the patient will need care only **intermittently** or on a part-time basis, please indicate the probable **duration** of this need:

Pt's needs for care assistance will last the duration of her life, & needs will increase as her condition declines.

[signature] (Dr. M. Marschke, MD)
Signature of Health Care Provider

Horizon Hospice
Type of Practice

833 W. Chicago Ave
Address
Chicago, IL 60622

(312) 733-8900
Telephone Number

3/13/2008
Date

**To be completed by the employee needing family leave to care for a family member:**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

[signature]
Employee Signature

3/13/08
Date

# LEAVE REQUEST FORM

To: Fisher Date: 1/15/08
Employee's Name: Beverly Ballard Dept/Div:
Job Title: Rec. Instructor Work Location:
Social Security No.: Region:

**REASON FOR LEAVE

( ) Vacation
( ) Compensatory Leave ("F" Time)
( ) Personal Day
( ) Sick Leave/Maternity Leave
( ) Administrative Leave*
( ) Funeral Leave (FAD)
( ) Court Leave (Jury Duty)
( ) Military Leave
( ) Leave Without Pay**
( ) Other**
( ) FMLA (attach required forms)

Explanation, if necessary: Trip grant to my mom on Jan 27-28-2008

LEAVE REQUESTED:

From: Date Jan 21 Time 1:00 A.M. P.M. Number of Hours on Leave

To: Date Jan 29 Time 9:00 A.M. P.M. Number of Working Days on Leave 8

I recommend that this leave be approved ( ) with pay. I have verified that the above benefit time is available.
I recommend that this leave be approved ( ) without pay.

Time Balance Confirmed By: Date
Supervisor's Signature: Date
Department/Region Manager's Signature: Date

*FOR ADMINISTRATIVE LEAVE REQUESTS

General Superintendent and CEO

**SOME LEAVES ARE SUBJECT TO APPROVA

HR Dept. - 510
Revised 7/98

White

Denied
Not enough benefit time.
Location not covered.

EXHIBIT
7A
Ballard
2-23-11
PENGAD 800-631-6989

fairygodmother FOUNDATION®

EXHIBIT
73
Ballard
2-23-11
PENGAD 800-631-6989

December 19, 2007

Ms. Sarah Ballard
11829 South Ashland
Chicago, IL 60643

Dear Ms. Ballard:

Fairygodmother Foundation is looking forward to granting your wish! I am sending you a copy of the wish agreement that you and I have signed. This paperwork is for your records; you do not need to reply. Please note that Fairygodmother Foundation's guidelines state that our wish recipients have not previously received a wish from any wish-granting organization. If you have worked with any other wish-granting agency, or if you begin to do so, please notify Fairygodmother Foundation immediately.

Please take the time to review the signed wish agreement, especially the parts that I have highlighted. As requested, Fairygodmother Foundation will be happy to assist you as best as we can.

**Wish Requested:** A trip to Las Vegas. Fairygodmother Foundation will provide roundtrip airfare for you as well as for your daughter, Beverly. We will also provide hotel accommodations, 2-3 meals, transportation to and from Midway Airport, and a wheelchair rental.

**Please Note:** Fairygodmother Foundation will attempt to obtain, but cannot guarantee, tickets to any show in Las Vegas. If a need for oxygen arises before or during the wish trip, it must be arranged by the wish recipient.

All solicitations for money, hotel stays, travel expenses, meals, and other goods and services must be made through Fairygodmother Foundation.

If you have any questions or need additional information, please contact Lindsay Prombaum, Wish Granting Coordinator, at 312.573.0028 x21.

Sincerely,

Ms. Stevie Ball
Chief Executive Officer

EXHIBIT 7C BALLARD 2-23-11 PENGAD 800-631-6989

1/15/2008

125

Dear J. Fisher

Am Instructor Ballard From Redeye Park Pool is asking For time off Due that my Mother Sarah Ballard where grant a trip to Las Vegas From Jan. 21. 28. 2008. The Fairygodmother foundating granting my mother her wish to Las Vegas! From my Mother Sarah Ballard + Instructor Ballard would like to to Thank you in advance.

P.S.

If you have any questions or need addition Information please contact Lindsay Prombaum, Wish Granting Coordinator at 312.573-0028 x21 or Ballard at 773.876.8743

21, 22, 23, 24, 24

PD PD PD PD

F S
21/22/23 24) 25/26

F S
(Jan- 1/21/22/23/24) 25/26/27) 2008
P P P D
FL FL FL FL)

28-

EXHIBIT
7D
PENGAD 800-631-6989
2-23-11



Ex. 7D

# LEAVE REQUEST FORM

To Fisher

Date 1/15/08

Employee's Name Beverly Ballard

Dept./Div. Beach + Pool

Job Title Lic. Instructor

Work Location Ridge

Social Security No.

Region South

**REASON FOR LEAVE**

- ( ) Vacation
- ( ) Compensatory Leave ("F" Time)
- ( ) Personal Day
- ( ) Sick Leave/Maternity Leave
- ( ) Administrative Leave*
- ( ) Funeral Leave ("AD")
- ( ) Court Leave (Jury Duty)
- ( ) Military Leave
- ( ) Leave Without Pay**
- ( ) Other**
- ( ✓ ) FMLA (attach required forms)

Explanation, if necessary Trip Grant to Meg Meeting on Jan 21-28-2008

**LEAVE REQUESTED:**

From: Date Jan 21 Time 1:00 A.M. P.M. (circled) Number of Hours on Leave 48

To: Date Jan 29 Time 9:00 A.M. P.M. (circled) Number of Working Days on Leave 8

I recommend that this leave be approved ( ) with pay; I have verified that the above benefit time is available.

I recommend that this leave be approved ( ) without pay.

Time Balance Confirmed By Date

Supervisor's Signature [signature] Need coverage Sunday Jan 27, 2008 Date 1-15-07

Department/Region Manager's Signature Date

***FOR ADMINISTRATIVE LEAVE REQUESTS**

General Superintendent and CEO Date

Only the General Superintendent can authorize Administrative Leave Requests

**SOME LEAVES ARE SUBJECT TO APPROVAL PENDING THE RETURN OF UNIFORMS, KEYS AND OTHER PARK DISTRICT PROPERTY ISSUED TO YOU.

HR Dept. - 510
Revised 7/98

White: Supervisor's copy – Yellow: Employee's copy – Pink: HR Manager's copy

EXHIBIT 8 Ballard 2-23-11
PENGAD 800-631-6989

EXHIBIT 9
Ballard
2-23-11
PENGAD 800-631-6989

Step 5: Complete Our Wish Agreement

## Wish Agreement

**Instructions: Please read completely, fill in ALL blanks, initial where indicated, and sign on last page. A witness (someone who will not participate in your wish) must be present for signings. Please call 312.573.0028 if you need assistance to complete the paperwork, or if you have any questions or concerns.**

**Please Note:** Only Fairygodmother Foundation may make a request on behalf of a wish. If the wish recipient, family members, friends, or anyone having knowledge of this wish uses the name Fairygodmother Foundation to solicit support, except with Fairygodmother Foundation's express advance written permission, your wish will be immediately disqualified.

This Agreement is made by and between **Fairygodmother Foundation** (hereinafter "Fairygodmother"), an Illinois not-for-profit corporation, with mailing address of 213 West Institute Place, Suite 509, Chicago, Illinois 60610 and (wish recipient name here) Sarah Ballard (hereinafter "recipient") living at (address, city, state, and zip code)

~~[illegible]~~ 11829 S. Ashland Chicago, IL 60643

**Wish requested:** a trip to Las Vegas in January, 2008

**Alternate wish requested (if any):** ____________________

**1.) Granting of wish.** Fairygodmother will attempt to grant recipient's wish as resources permit in accordance with the terms and conditions of this Agreement. Fairygodmother reserves the sole right to decide which of recipient's wishes described above will be granted. There is no guaranty that either of the recipient's wishes will be granted at all.

**2.) Permission to Disclose Medical Condition.** Recipient grants Fairygodmother the right to disclose the nature of his/her medical condition in the preparation, fulfillment, and execution of the wish. Furthermore, recipient grants Fairygodmother permission to obtain all medical information about recipient – including a full medical report – which Fairygodmother may feel necessary or useful for consideration or fulfillment of the wish. Recipient authorizes all physicians and medical providers to provide Fairygodmother with all medical information requested, and agrees to sign any additional documentation that may be required by any medical provider.

**3.) Relatives/Friends.** No person may accompany the wish recipient during any portion of the wish fulfillment unless specifically agreed to in advance and in writing between Fairygodmother and recipient. In most cases, only immediate family will be allowed to participate in the wish.

**Please note the following paragraphs contain waivers, releases, and agreements to indemnify that affect your legal rights and responsibilities.**

**4.) Waiver.** Recipient and family (hereinafter collectively referred to as "participants") hereby waive any and all rights he, she, or they may have or may hereafter acquire against Fairygodmother, its officers, directors, agents, employees, and representatives arising out of any injury, harm, damages, or losses suffered by recipient and participants, or any of them, arising out of or in any way related to Fairygodmother's consideration, preparation, execution, fulfillment or participation in the wish, regardless of whether such loss or harm is caused by the active, passive, or gross negligence of Fairygodmother, its officers, directors, agents, employees, or representatives.

**5.) Release.** Recipient and participants together, and each of them individually, understand that involvement in the wish may involve risk of injury or harm to themselves and agree that they have been fully informed about and understand any and all such risks, that this risk is knowingly and fully assumed by recipient and participants. In addition, and in consideration of Fairygodmother Foundation considering the wish and, if it so determines, granting the wish, recipient and participants do hereby forever release and agree to hold harmless Fairygodmother, its officers, directors, agents, employees, and representatives from any and all liability, claims, lawsuits, damages, or losses, whether known or unknown, which may be connected with, result from, or arise out of the consideration, execution, preparation, fulfillment, or participation in the wish, of whatever nature and to whatever extent, regardless of whether such loss or damage is caused by the active, passive, or gross negligence of Fairygodmother, its officers, directors, agents, employees, or representatives. This includes, but is not limited to, any problems with transportation, food and lodging, medical conditions – both physical and emotional – entertainment, photographs, publicity, accidental injury, and death.

**6.) Indemnity.** Recipient and participants, together and each of them individually, hereby agree to indemnify and hold harmless Fairygodmother, its officers, directors, agents, employees, and representatives of and from any and all losses suffered by Fairygodmother, its officers, directors, agents, and employees as the result of any claim, lawsuit, or action arising out of or relating in any manner to Fairygodmother's consideration, preparation, execution, fulfillment or participation in the wish, or to breach by recipient and participants, or any of them, of the representation and warranties contained in this Agreement. Said hold harmless and indemnity includes, but is not limited to, reasonable attorneys' fees and costs incurred by Fairygodmother, its officers, directors, agents, employees, and representatives in retaining attorneys of Fairygodmother's choice to defend any and all such claims, lawsuits, and actions.

**7.) Wish Expenses. The expenses Fairygodmother has agreed to pay for are those foreseeable and directly related to the fulfillment of the wish.** Recipient and participants together, and each of them individually, understand that they may be forced to incur substantial expenses as a result of foreseeable or unforeseen events or circumstances beyond Fairygodmother's control, especially if fulfillment of the wish involves travel. Fairygodmother shall not have any responsibility or liability for expenses incurred by recipients and participants, or any of them, which have not been expressly assumed by Fairygodmother pursuant to this Agreement.

**For example**, a particular wish may contemplate Fairygodmother paying for certain specific expenses (such as a rental car) for a specific period of time while recipient is traveling away from home. If recipient's medical condition deteriorates so that immediate hospitalization is necessary, recipient may be forced to remain away from home longer than the period of time contemplated by the wish. In that event, it will be the sole responsibility of recipient to pay for all expenses in excess of those for which Fairygodmother has agreed to pay, whether medically related, for meals, lodging (including hospitalization), transportation, a change in travel plans, or for other goods or services of any nature.

**8.) Fundraising.** Fairygodmother Foundation's wish-granting program depends on in-kind support and generous donations. As a recipient in the wish-granting program, you can start a fundraising campaign or Fairygodmother can start a fundraising campaign in your community, with your prior approval, to raise necessary funds and/or airline miles or tickets to grant your wish. Possible sources of funding and/or airline miles or tickets include recipient's friends, family, schools, local businesses (such as banks, grocery stores, dry cleaners, and restaurants), and employers for which recipient, family members, or friends have worked, and organizations to which recipient, family members, or friends belong or have belonged. In all circumstances, Fairygodmother Foundation will retain complete control and administration over the use of all donated funds. Money raised will be used for recipient's Wish up to a maximum allocation of $500. This allocation will increase for Embrace-A-Wish sponsored wishes. The allocation will not exceed the amount donated by the Embrace-A-Wish sponsors for the wish. Funds, airline tickets or miles raised above recipient's allocation will be used for future wishes of other recipients participating in the wish-granting program. It is understood that assistance from recipient or recipient's family, friends, participants, or community is never a requirement for fulfillment of a wish.

**INITIAL HERE. By Initialing here, I** acknowledge that I have read and understand the fundraising guidelines described above: G.B. **Recipient <u>must</u> initial here.**

**9.) Termination of wish.** Fairygodmother reserves the right, in its sole and absolute discretion, to abort consideration, preparation. Execution, fulfillment or participation in your wish at any time after the signing of this Agreement if Fairygodmother should determine that (a) fulfillment of the wish will endanger the health and safety of recipient or of others, (b) recipient is or will be incapable of appreciating or utilizing the goods, services, or activities related to the wish, (c) events or circumstances render it impractical, imprudent, or inadvisable to grant or continue to grant the wish, or (d) recipient and participants, or any of them, have breached any of the representations and warranties contained in this Agreement. In the event Fairygodmother aborts consideration, preparation, execution, fulfillment or participation in the wish, recipient and participants, together and individually, agree that Fairygodmother shall not be held liable or responsible for any expenses which recipients, participants, family members and friends, or any of them, may have incurred in contemplation of Fairygodmother's granting the wish.

**10.) Counterparts and Faxes.** This Agreement may be executed in counterparts, any of which shall be deemed an original. Faxed signatures on this Agreement shall be deemed as originals.

**11.) Further Assurances.** Recipient and participants, together and individually, agree that he, she, and they shall, at the request of Fairygodmother, execute and deliver to Fairygodmother all further documents that Fairygodmother deems necessary or appropriate in order to prepare, execute, and grant the wish.

**12.) Amendment.** This Agreement shall not be modified, amended. or superceded except by written Agreement executed by Fairygodmother, recipient, and all participants.

**13.) Governing Law.** This Agreement shall be governed by the laws of the state of Illinois, the state in which Fairygodmother is based.

**14.) Binding Effect.** This Agreement is binding on all heirs, successors, representatives, and assigns of each and all parties hereto.

**15.) Severability.** If any portion of this Agreement shall be determined to be invalid or unenforceable, all other portions shall remain valid and enforceable.

**16.) Entire Agreement.** This Agreement constitutes the entire Agreement and understanding of the parties with respect to the transaction (otherwise referred to as "the wish") contemplated herein, and supercedes all prior agreements, arrangements, and understandings related to the subject matter. No representation, promise, inducement, or statement of intention has been made by any of the parties hereto not embodied in this Agreement, and no party shall be bound by or liable for any alleged representation, promise, inducement, or statements of intention not set forth or referred to herein.

**17.) Captions.** The captions appearing in this Agreement are for convenience and ease of reference only. They in no way describe, limit, or extend this Agreement or any of its provisions.

**18.) Grant of Right of Publicity.** RECIPIENT AND PARTICIPANTS UNDERSTAND AND AGREE THAT FULFILLMENT OF THE WISH MAY RESULT IN PUBLICITY, WHETHER OR NOT FAIRYGODMOTHER FOUNDATION ACTIVELY TAKES STEPS TO PUBLICIZE THE WISH.

**OPTION 1:** Recipient and participants, individually and together, hereby irrevocably authorize Fairygodmother Foundation: (a) to publicize and use recipient and participants' likenesses, voices, and features, with or without their names, for any publication, promotion, trade, business use, or any other purpose whatsoever; (b) to photograph, videotape, film, and record recipient and participants, individually or together, in any manner Fairygodmother chooses; (c) to copyright, convey, or otherwise distribute, now or in the future, any such material involving recipient and participants, individually or together, for any purpose whatsoever to anyone, including the general public, magazines, newspapers, television, radio

stations, Fairygodmother's web site, or anyone else; (d) to publicize, now or in the future, the names of recipient and participants, individually or together, including information regarding them, their physical or emotional conditions, and the details of any wish granted.

Recipient and participants, individually and together, agree that it is not necessary for Fairygodmother Foundation or anyone else to contact them prior to releasing any information authorized by this Agreement. Recipient and participants, individually and together, hereby release Fairygodmother Foundation, its officers, directors, agents, and employees, from all liability, damages, or claims of any kind resulting in or from, or arising from the use, distribution, or disclosure of any photographs, films, videotapes, electronic recording, or other information regarding recipient, participants, and the wish.

♦**Initial here if Option 1 (publicity approved) is selected** S. B. ________

**OPTION 2:** Recipient and participants request that the wish not be actively publicized by Fairygodmother Foundation to the news media and general public. However, recipient and participants, individually and together, understand and acknowledge that information regarding the wish, recipient, and participants will necessarily be discussed with and disclosed to those involved in the wish process. Recipient and participants, individually and together, also understand and acknowledge that, even if Fairygodmother Foundation does not actively publicize the wish, the general public and news media may obtain information concerning Recipient, Participants, and the wish from other sources, resulting in publicity.

♦**Initial here if Option 2 (publicity not approved) is selected** ________________

**<u>PLEASE NOTE</u>: RECIPIENT MUST INITIAL <u>EITHER</u> PUBLICITY OPTION ONE OR OPTION TWO.**

Recipient and each of the participants acknowledge reading and understanding this LIABILITY RELEASE AND PUBLICITY AUTHORIZATION prior to signing it. For any minor participants, the signature of his/her parent or guardian is both on behalf of the parent or guardian and on behalf of the minor. Recipient and each of the participants agrees that no modification of this release has been made orally or in writing, and this release accurately and fully expresses the understanding of the recipient and each of the participants.

**19.) Representations and Warranties.** Recipient and participants, together and each of them individually, make the following representation and warranties to Fairygodmother:

(a) they have made a true and full disclosure of recipient's medical condition and medical needs to Fairygodmother;
(b) they will notify Fairygodmother if and when recipient's medical condition should deteriorate at any time prior to fulfillment of the wish;
(c) they are carrying, or during the fulfillment of the wish shall be carrying, full medical insurance, including any additional coverage which may be required as a result of the wish to be granted, or that they assume the risk and personal responsibility of failing to carry adequate medical insurance;
(d) if fulfillment of the wish involves travel, they are able to bear the financial burden of the substantial expenses which they may be forced to personally incur as a result of foreseeable or unforeseen circumstances or events beyond Fairygodmother's reasonable control (more fully explained in paragraph 7), and that they assume the risk and personal responsibility for such expenses;
(e) Recipient has not previously been granted a wish by Fairygodmother or another charitable wish-granting organization; and is not pursuing a wish from any other wish-granting organization; and
(f) in requesting Fairygodmother to grant the wish, they are not relying upon nor have they received any counsel or advice from Fairygodmother with respect to the advisability of or the risks attendant to the wish.

**PLEASE NOTE- THE WISH RECIPIENT, <u>ALL</u> PARTICIPANTS, AND THE WITNESS MUST SIGN ON FOLLOWING PAGE.**

**IMPORTANT:** By signing below, I affirm and acknowledge that I have read this Agreement, and have been given an opportunity to ask any questions I may have. I have received a copy and fully understand and agree with its provisions. With my signature I bind myself, my children including my minor children, my heirs, successors, assigns, and estates to the conditions, releases, waivers, and indemnities described in this Agreement

**FAIRYGODMOTHER FOUNDATION**

PRINT NAME: Ms. Stevie Ball, Chief Executive Officer, Fairygodmother Foundation

SIGNATURE/DATE: Stevie Ball

♦**WISH RECIPIENT**
PRINT LEGAL NAME: Sarah Ballard

SIGNATURE/DATE. Sarah Ballard

**Note: A parent or legal guardian must sign for each participant under the age of 18. Please indicate nature of relationship and age of child.**

♦**PARTICIPANT**
PRINT LEGAL NAME: Beverly Ballard

RELATIONSHIP: pt's daughter

SIGNATURE ______ DATE ______

♦**PARTICIPANT**
PRINT LEGAL NAME: ______

RELATIONSHIP: ______

SIGNATURE ______ DATE ______

♦**PARTICIPANT**
PRINT LEGAL NAME ______

RELATIONSHIP ______

SIGNATURE ______ DATE ______

♦**PARTICIPANT**
PRINT LEGAL NAME: ______

RELATIONSHIP: ______

SIGNATURE ______ DATE ______

♦**WITNESS** (must be someone who is not participating in wish)

Print Witness Legal Name: Lindsay Wooster Relationship hospice social worker

SIGNATURE/DATE: [signature]

Witness Address: 833 W Chicago Ave

Witness Phone: 312-733-8900

EXHIBIT
10
Ballard
2-23-11
PENGAD 800-631-6989

fairygodmother FOUNDATION

January 16, 2008

Ms. Sarah Ballard
11829 South Ashland
Chicago, IL 60643

Dear Sarah:

It has been a pleasure working on your wish. I hope you and your family have a wonderful time in Las Vegas.

Please look over the information I have sent you. In the folder you will find a letter certifying that you are a Fairygodmother Foundation participant (3 copies), a check for transportation money, and your travel itinerary (3 copies). Please read all these materials and call me before you leave with any questions or concerns that you have.

Again, please call me at 312.573.0028 x21 with any questions. If an emergency arises while you are on your trip and it is after business hours, you can reach me via my cell phone at 630.207.7554 or you can reach Ms. Lena Clement, Program Director, or Ms. Stevie Ball, CEO. I have listed their numbers in your travel itinerary. Please note that Fairygodmother Foundation's office will be closed Monday, January 21st, 2008.

Thank you and have a wonderful trip!

Lindsay Prombaum

Lindsay Prombaum
Wish Granting Coordinator

213 West Institute Place, Suite 509 | Chicago, Illinois 60610 | 312.573.0028 | 312.573.0047
www.fairygodmother.org

EXHIBIT
11
PENGAD 800-631-6989
2-23-11

**Subject:** Ticketless Travel Passenger Itinerary
**From:** "Southwest Airlines" <SouthwestAirlines@mail.southwest.com>
**Date:** Thu, 10 Jan 2008 10:49:21 -0600
**To:** <lindsay@fairygodmother.org>

SOUTHWEST.COM

This e-mail contains Southwest Airlines Ticketless Travel information and is being sent to you at the request of the Purchaser, Passenger, or individual responsible for arranging this air travel.

**Confirmation Number**

**KBCFZ2**

**Passenger(s):**

SARAH BALLARD
BEVERLY BALLARD

**Itinerary**

| Date | Flight | Routing Details |
|---|---|---|
| Mon Jan 21 | 2545 | Depart Chicago (Midway)(MDW) at 01:30 PM<br>Arrive in Las Vegas(LAS) at 03:30 PM |
| Sat Jan 26 | 622 | Depart Las Vegas(LAS) at 02:15 PM<br>Arrive in Chicago (Midway)(MDW) at 07:45 PM |

This is an itinerary only and is not considered a receipt.

**Click 'n Save ®**

Sign up today at www.southwest.com/email to receive a weekly e-mail announcing our latest special offers!

**Important Checkin Requirement**

Passengers who do not obtain a boarding pass and are not present and available for boarding in the departure gate area at least ten minutes prior to scheduled departure time may have their reserved space cancelled and will not be eligible for denied boarding compensation.

**Southwest Airlines Co. Notice of Incorporated Terms**

Air transportation by Southwest Airlines is subject to Southwest Airlines' Passenger Contract of Carriage, the terms of which are incorporated by reference.

**Notice of Incorporated Terms**

**Additional Information for Travelers**

fairygodmother FOUNDATION

EXHIBIT 2
PENGAD 800-631-6989
2-23-11

January 21, 2008

To Whom It May Concern:

This letter certifies that Ms. Sarah Ballard is enrolled in Fairygodmother Foundation's Wish Granting Program.

Fairygodmother Foundation is a 501 (c)(3) charitable organization that grants end-of-life wishes to adults facing terminal illness with less than one year to live. In the past 9 years, Fairygodmother Foundation has granted hundreds of wishes nationwide. In the process of granting wishes, Fairygodmother Foundation provides an opportunity for peace, closure, and cherished memories.

Ms. Tune has requested to travel to Las Vegas with her daughter from January 21 – 26, 2008 and we are pleased to let you know that Fairygodmother Foundation is granting her wish.

Thank you for your generosity and cooperation. If you have any questions, please feel free to contact me at 312.573.0028 x21 or 630.207.7554 (after hours/weekends) to verify this information.

Sincerely,

Lindsay Prombaum
Wish Granting Coordinator

[illegible] Place, Suite [illegible] | Chicago, [illegible] | 312.[illegible] | [illegible]
www.[illegible]

Horizon Hospice & Palliative Care

SINCE 1978

EXHIBIT 13 PENGAD 800-631-6989 2-23-11

**ATTN: Eric Fisher**
**Janet McDonough**

**RE: Beverly Ballard**

November 13, 2007

Dear Mr. Fisher and Ms. McDough,

This letter is being written at the request of Beverly Ballard to clarify a previously submitted letter regarding the terminal status of her mother, Sarah Ballard. As the aforementioned letter stated, Sarah Ballard is a current patient of Horizon Hospice; she was admitted into our program on April 25, 2006 and has a terminal diagnosis of end-stage CHF.

Admission into a hospice program requires the predication of at least two medical professionals that a patient's prognosis is less than six months. Beverly has informed our social worker that this explanation on the previous letter may have been misleading; please note that, while Sarah has been a patient in our program for 1 1/2 years and has outlived prior predictions of her prognosis, she continues to become increasingly weak and her health is declining. Because of her illness, she certainly remains appropriate to continue receiving hospice services and her health is not expected to improve.

As a result of her terminal status, Ms. Ballard does require assistance in caregiving. Beverly and her mother live in the same home, and it is Beverly's responsibility to assist her mother as needed.

Beverly has informed our staff of an employment disciplinary letter received November 3, 2007 that makes reference to days in which Beverly either missed or was late to work. We hope that this letter might provide some verification of Beverly's home situation to explain the absences/late days.

It has been the pleasure of Horizon Hospice to service both Beverly and her mother, and, if needed, we would be happy to provide additional information. Please do not hesitate to contact their social worker, Lindsay Wooster, at (312) 733-8900.

Sincerely,

Michael Marschke, MD
Medical Director

Lindsay Wooster, LSW
Social Worker

833 West Chicago Avenue • Chicago, Illinois 60622 • www.horizonhospice.org
Administration: 312.733.2233 fax 312.733.8931
Patient Care: 312.733.8900 toll-free 866.733.6028 fax 312.733.8952

Horizon Hospice

PROVIDING A CIRCLE OF CARE

EXHIBIT 14
PENGAD 800-631-6989
2-23-11

June 17, 2007

RE: Beverly Ballard

To Whom It May Concern:

This letter is being written at the request of Beverly Ballard to verify that her mother, Sarah Ballard, is currently receiving hospice services. Ms. Ballard has a terminal diagnosis of end-stage CHF. Ms. Ballard is not expected to recover from this illness; she was admitted into Horizon Hospice's home care program in April of 2006.

Beverly has been instrumental in assisting with the care of her mother and has taken considerable initiative to ensure she is able to remain living in the home. Most recently, Ms. Ballard's care needs required hospitalization June 3, 2007 – June 5, 2007. After returning home, she and Beverly were advised by their medical team that Ms. Ballard not be left home alone. Consequently, Beverly was unable to work the first two weeks of that month. Please understand that, in the future, there may be times in which Ms. Ballard's care needs will require some flexibility of Beverly's work schedule.

It has thus far been the pleasure of Horizon Hospice to service Beverly and her mother, and, if needed, I would be happy to provide further information. Please do not hesitate to contact me at (312) 733-8900.

Sincerely

Lindsay Wooster, MSW, LSW

833 West Chicago Avenue • Chicago, Illinois 60622 • www.horizonhospice.org
Administration: 312.733.2233 fax 312.733.8931
Patient Care: 312.733.8900 fax 312.733.8952

Horizon Hospice & Palliative Care

SINCE 1978

EXHIBIT
PENGAD 800-631-6989
2-23-11

November 3, 2008

**ATTN: Medical Records**
**RE: People's Energy Account: 85 00000 89 5637**

To Whom It May Concern:

I am writing on behalf of Ms. Sarah Ballard, who resides at 11829 South Ashland, Chicago, IL, 60643. People's Energy provides service for this residence under the above account number.

The family has requested that I submit this letter to you to verify that Ms. Ballard is a seventy-two year old woman with a terminal diagnosis of end-stage congestive heart disease; she is not expected to recover from this illness. Ms. Ballard is visited in her home by a nurse practitioner through Horizon Hospice's Palliative Care program so that her fragile medical condition can be closely monitored.

Due to unforeseen financial circumstances, Ms. Ballard and her family have been without gas services for many months and are now attempting to utilize CEDA funds to restore their services before winter. I ask that you please consider the medical condition of Ms. Ballard and make restoration of this account a top priority. If you might be in need of additional information from our agency to process this request, please do not hesitate to contact Ms. Ballard's social worker at (312) 733-8900.

Sincerely,

Dr. Joanna Martin, MD
Medical Director

Lindsay Wooster, LSW
Social Worker

Horizon Hospice & Palliative Care

SINCE 1978

EXHIBIT 16
PENGAD 800-631-6989
2-23-11

Chart Copy

December 16, 2008

To Whom It May Concern:

This letter is being written at the request of Beverly Ballard, who has requested our agency provide this verification about the care and medical condition of her mother, Mrs. Sarah Ballard. Mrs. Ballard has been known to Horizon Hospice and Palliative Care since April, 2006. At this time, she was believed to be in the terminal stages of her illness, and was admitted into our hospice program. Throughout the time that she was in our program, her condition stabilized and our medical team made the decision that she no longer met the criteria to continue receiving hospice services; she was transferred to our palliative care program in August, 2008.

As part of our agencies plan of care in providing hospice services to terminally ill patients, our medical and psychosocial team strives to help patients identify and meet end-of-life goals. During the time that Mrs. Ballard was receiving hospice services, she began to talk with her team members about being able to take a trip with her family members to Las Vegas. After determining that she was medically stable enough to take this trip, our social worker was able to identify a foundation, The Fairygodmother Foundation, that would be able to facilitate and fund this trip for Mrs. Ballard and her daughter, which took place January 21, 2008 - January 26, 2008.

Beverly Ballard functioned as the primary caregiver for Mrs. Sarah Ballard. After Mrs. Ballard and her daughter returned from their trip, our social worker continued to visit regularly to provide support. A note in the patient's medical chart reveals that Beverly provided FMLA forms to the social worker on March 6, 2008. These papers were completed and dated by our physician on March 13, 2008.

It was the pleasure of Horizon Hospice to service Mrs. Ballard and her daughter; if you might be in need of any additional information, please do not hesitate to contact us at (312) 733-8900.

Sincerely,

MD.
Joanna Martin, MD
Medical Director

Roxanne D LCSW
Roxanne Dominis, LCSW
Social Work Coordinator

833 West Chicago Avenue • Chicago, Illinois 60642 • www.horizonhospice.org
Administration: 312.733.2233 fax 312.733.8931
Patient Care: 312.733.8900 toll-free 866.733.6028 fax 312.733.8952

EXHIBIT
17
PENGAD 800-631-6989
2-23-11

Name ______________________________

Date ______________________________

SS# ______________________________

HMC
HARMON MEDICAL CENTER

# URGENT CARE DISCHARGE INSTRUCTIONS

The examination and treatment which you have received have been on an **EMERGENCY BASIS ONLY**. It has not been intended to be a substitute or replacement for complete medical care. It is advised that you follow the recommendation below.

**1** **If complications arise, call your doctor or the doctor to whom you have been referred immediately. If the doctor cannot be reached return to Urgent Care.**

**2** **Have your prescriptions filled and follow precisely the directions on the label. For all refill requests, call your primary care provider.**

**3** **The x-ray report given to you is not final. Final review by the Radiologist will be made the following day.**

**4** **If Laboratory tests (Blood, Cultures, Etc.) were done in the Urgent Care, follow up with your Primary Care Provider. Out of town patient may call (702) 796-1116 for results.**

**WOUND CARE** ☐
1. Keep involved area dry & covered with a clean dressing.
2. Watch for redness, swelling, drainage, as any wound can become infected. If your wound becomes red, swollen, shows pus or red streaks, or feels more sore as days go by, you must report to your doctor right away.
3. Have wound rechecked on ______________________.
4. Stitches should be removed at your doctors office in ________days.

**SOFT TISSUE** ☐
1. Elevate the involved part to reduce swelling.
2. Ice packs also help prevent swelling, especially during the first 24 hours. Place ice in plastic or rubber bag and cover with cloth.
3. If you have an elastic bandage, re-wrap it if too tight or too loose.
4. Activity ______________________________
5. Call your doctor for follow-up appointment in ____________days.

**SOAKS** ☐
1. Keep area bandaged except for soaking.
2. Use warm/hot soaks________times a day for 30 minutes for ________days.

**COLD/ BRONCHITIS** ☐
- ☐ Rest, fluids, this is self limiting & should resolve in a few days.
- ☐ Take over the counter drugs as prescribed.

**FOLLOW-UP** ☐
Within the next 24 hours, call Dr. ________________for an appointment on ______________________________
for: ☐ Exam and re-evaluation.
☐ Further treatment of the condition which brought you here.
☐ If symptoms persist, follow-up with your Primary Care Provider within __________Days.
☐ Return to urgent care in___________days for re-check.

**ACTIVITY** ☐
- ☐ You may return to work or school today.
- ☐ You may return to work or school in_______days. (this is an estimation)
- ☐ You will need re-evaluation by your ☐ physician or ☐ company doctor prior to returning to work.

**DIARRHEA** ☐
Clear liquids only until diarrhea ceases, then increase diet.

**HEAD INJURY OBSERVATION** ☐
Watch for the following signs following head injury. Report them to your physician (even with several months).
1. Inability to awaken or easily arouse patient.
2. Mental confusion or unusual drowsiness, dizziness, or headaches.
3. Loss of coordination.
4. Unequal pupils or any visual difficulties.
5. Repeated vomiting.
6. Convulsions.
7. Fever
8. If asleep, awaken every 2 hours during the day and night for 24 hours.
9. Headache that increases in severity over 24 hours.
10. Observe for 24 hours by an adult.
11. Nothing except aspirin or plain Tylenol for pain as medications could mask other signs or symptoms.
12. Tranquilizers or sleeping pills should not be given.

**CAST/SPLINT** ☐
1. Cast materials take 24-72 hours to dry.
2. Keep cast clean and dry and protect it from damage.
3. Never put objects inside cast to relieve itching.
4. Watch for swelling, increasing pain, burning, color changes, numbness, or tingling of injured limb. If any of the above, notify your doctor.
5. Exercise fingers or toes of affected limbs.

**FEVER** ☐
1. Take___Aspirin, ___Advil and/or___Tylenol for temperature over 101° every four hours.
2. Increase fluids in small amounts by mouth, no need to worry about solid foods at this time. (Very important)
3. A cool sponge or tub bath for temperature over 103°.
4. If fever uncontrolled by these measures, contact your personal physician.

**VOMITING** ☐
1. No fluids until 4 hours after vomiting stops, then begin very small amounts of clear liquids (water, soft drinks, weak tea, bouillon, jello water (teaspoons of powdered jello per glass of water).
2. Avoid solid foods until nausea and vomiting and/or diarrhea is gone for 12 hours.
3. If nausea, vomiting and/or diarrhea are not controlled by these measures contact your personal physician.

☐ **WARNING. YOU HAVE RECEIVED A DRUG THAT MAY CAUSE DROWSINESS. DO NOT DRIVE OR TAKE ALCOHOL.**

Rx ______________________________________________

☐ Patient verbalized understanding of discharge instructions.

I hereby acknowledge receipt of the instructions indicated above. I will arrange for follow-up care, as instructed above.

______________________________ Provider Signature

______________________________ Patient Signature

# HARMON MEDICAL CENTER

150 E. Harmon Ave., Las Vegas, NV 89109 (702) 7

| X | NEW PATIENT | FEE | X | ESTAB PATIENT | FEE |
|---|---|---|---|---|---|
| | 99201 | 100 | | 99211 | 85 |
| | 99202 | 125 | | 99212 | 100 |
| | 99203 | 150 | | 99213 | 125 |
| | 99204 | 200 | | 99214 | 150 |
| | 99205 | 255 | | 99215 | 200 |
| | 99024 Global F/U | | | | |
| | 99080 School/Sports | | | | 25 |
| | 99080 DOT Physical | | | | 49 |

| X | CONSULTS | CODE | FEE |
|---|---|---|---|
| | | 99241 | |
| | | 99242 | |
| | | 99243 | |
| | | 99244 | |
| | | 99245 | |

| X | INJECTIONS | CODE | FEE |
|---|---|---|---|
| | Ampicillin 500mg | J0290 | 20 |
| | Ancef (Cetazolan) 500mg | J0690 | 30 |
| | Benadryl (Diphenhydramine) up to 50mg | J1200 | 25 |
| | Bicillin LA up to 1,200,000 units | J0570 | 60 |
| | Bicillin CR up to 1,200,000 units | J0540 | 55 |
| | Claforan per g x______ gm | J0698 | 40 |
| | Cleocin 900 mg | S0077 | 30 |
| | Compazine (Prochloperazine) up to 10mg | J0780 | 25 |
| | Depo-Estradiol up to 5mg | J1000 | 25 |
| | Demerol (Meperidine HCl) per 25mg | J2175 | 15 |
| | Epinephrine up to 1ml ampule | J0170 | 15 |
| | Estradiol Valerate up to 40mg | J0970 | 25 |
| | Imitrex 6mg | J3030 | 75 |
| | Insulin Regular per 5 units x______ units | J1815 | 15 |
| | Kenalog (Triamcinolone AC) per 10mg MG | J3301 | 5 |
| | Lasix (Furosemide) up to 20mg | J1940 | 20 |
| | Morphine Sulfate 10mg x______ MG | J2270 | 35 |
| | Norflex (Orphenadrine) up to 60mg | J2360 | 70 |
| | Nubain per 10mg | J2300 | 20 |
| | Phenergan (Promethazine) up to 50mg | J2550 | 20 |
| | Rocephin per 250mg x______ MG | J0696 | 35 |
| | Solumerdrol up to 125mg | J2930 | 25 |
| | Tigan up to 200mg | J3250 | 15 |
| | Toradol per 15mg x | J1885 | 10 |
| | Valium (Diazepam) up to 5mg x______ MG | J3360 | 15 |
| | Vistaril (Hydroxzine) up to 25mg x______ MG | J3410 | 20 |
| | Vitamin B-12 up to 1000mcg | J3420 | 20 |
| | Zantac 25mg x______ MG IMU | J2780 | 8 |
| | Therapeutic Injection/Vaccine-Toxoid | 90471 | 15 |
| | Intramuscular (IM) Injection of Antibiotic | | 20 |
| | Inapsine 5mg | J1790 | 10 |
| | Unasyn 1.5gm x______ gms | J0295 | 20 |
| | Reglan 10mg | J2965 | 10 |
| | Celestone 4mg | J0704 | 15 |
| | Lanoxin____mg | J1160 | 12 |
| | Narcan 1mg x______ mg | J2310 | 10 |
| | Adenosine (Adenocard) 6mg______ mg | J0150 | 90 |
| | Nitro Spray Sub L Paste | J8499 | 15 |
| | Combivar | | |
| | Decadron 4mg | | 20 |
| | Other: | | |
| | GI Cocktail | J8499 | 30 |
| | Magic Mouthwash | | 30 |
| | Tigan Supp. | | 15 |

| X | INTRAVENOUS | CODE | FEE |
|---|---|---|---|
| | Introduction of IV Catheter | 36000* | 145 |
| | IV Tubing | 99070 | 15 |
| | IV Infusion up to 1 hour | 90760 | 75 |
| | IV Infusion each add'l hour x's | 90764 | 70 |
| | IV D5W 150 cc | J7060 | 25 |
| | IV/IVBP Injection | 90774 | 35 |
| | Normal Saline 250 cc | J7050 | 10 |
| | Normal Saline 500 cc | J7040 | 20 |
| | Normal Saline 1000 cc | J7030 | 30 |
| | Saline or Water Flush up to 5 cc | A4218 | 5 |
| | Heparin Flush per 10 units x______ units | J1642 | 15 |
| | Needle Only, any size | A4215 | 20 |
| | Heparin Lock | | 20 |

| X | IMMUNIZATIONS | CODE | FEE |
|---|---|---|---|
| | Hepatitis B, Peds & Adolescent | 90744 | 45 |
| | Hepatitis B, Adult dosage | 90746 | 80 |
| | Hep B Series 3 Dose | 90740 | |
| | Influenza 3yrs & above dosage | 90658 | 25 |
| | TB Test, Skin Test | 86580 | 30 |
| | Pneumovax | 90732 | 35 |
| | DT | 90718 | 25 |

| X | XRAYS | CODE | FEE |
|---|---|---|---|
| | Abdomen | 74000 | 100 |
| | Acute ABD 3 View | 74022 | 200 |
| | Chest 1 View | 71010 | 90 |
| | Rib Series with PA Chest | 71101 | 160 |
| | Chest 2 View | 71020 | 125 |
| | CSpine Complete | 72050 | 155 |
| | TSpine | 72070 | 130 |
| | LSpine Complete | 72110 | 185 |
| | LSpine 3 View | 72100 | 130 |
| | Hip 2 View With Pelvis | 73510 | 110 |
| | Bilateral Hips With Pelvis | 73520 | 155 |
| | Pelvis | 72170 | 95 |
| | Hand Complete | 73130 | 105 |
| | Finger | 73140 | 70 |
| | Wrist | 73110 | 100 |
| | Elbow | 73080 | 95 |
| | Forearm | 73090 | 90 |
| | Shoulder | 73030 | 105 |
| | Foot Complete | 73630 | 100 |
| | Toes | 73660 | 70 |
| | Ankle | 73610 | 95 |
| | Tib Fib | 73590 | 75 |
| | Femur | 73550 | 95 |
| | Knee | 73564 | 105 |
| | Skull Complete | 70260 | 155 |
| | Sinus | 70220 | 95 |
| | Mandible | 70110 | 125 |
| | Orbits | 70200 | 125 |
| | Nasal Bones | 70160 | 95 |
| | TMJ's | 70330 | 125 |
| | Facial | 70150 | 150 |
| | Humerous | | 75 |
| | Sternum | | 100 |
| | Comparison View____x2 | 77299 | |
| | Sac / Coccyx | | 125 |
| | Heel | | 90 |
| | Scapula X-ray | | 105 |
| | Other:______ | | |

{CASH PAY NO INSURANCE 50% OFF OFFICE VISIT}

{CASH PAY NO INSURANCE 20% OFF ADDITIONAL SERVICES}

| X | SPECIAL SERVICES | CODE | FEE |
|---|---|---|---|
| | Audiometry | 92551 | |
| | Accu-Check | 82948 | |
| | Catheterization, Simple, Foley | 51702 | |
| | Ear Irrigation. Ears | 69210 | |
| | EKG - 12 Lead | 93000 | |
| | EKG, Tracing Only | 93041 | |
| | Foreign Body Removal: Ear | 69200 | |
| | Foreign Body Removal: Eye | 65205 | |
| | Foreign Body Removal: Nose | 30300 | |
| | Handling Fee Specimen | 99000 | |
| | I & D Abscess | 10060 | |
| | I & R Foreign Body; Simple | 10120 | |
| | Repair Simple 1 Layer______cm | | |
| | Repair Interm 2 or More Layers______cm | | |
| | Lesion/Wart Remova- How Many? | | |
| | Nasal Hemorrhage, Simple | 30901 | 1 |
| | SVN Initial | 94640 | |
| | SVN Subsequent | 94640-76 | |
| | Tens Unit | 97014 | 4 |
| | Electrical Therapy | 97032 | 4 |
| | Electrical Stimulation 15 Minutes | | |
| | Trigger Point, 1 or 2 Muscles | 20552 | 1 |
| | Trigger Point, 3 or More Muscles | 20553 | 2 |
| | Urine Dip | 81002 | 2 |
| | Venipuncture | 36415 | 2 |
| | Venipuncture via Heplock | 36540 | 1 |
| | Excision of Skin Nail | 11570 | |
| | Hemoccult | 82270 | 3 |
| | Peak Flow | 94150 | 4 |
| | Short Arm Splint Dynamic | 29126 | 15 |
| | Short Arm Static | 29125 | 15 |
| | Long Arm Splint | 29105 | 18 |
| | Short Leg Splint | 29515 | 20 |
| | Long Leg Splint | 29505 | 25 |
| | Nail Plate Avulsion | 11730 | 15 |
| | In Grown Toe Nail Permanent Removal | 11750 | 25 |
| | U. A. Pregnancy Test | 81025 | |

| X | SUPPLIES | CODE | FE |
|---|---|---|---|
| | Ace Wrap 2" 3" 4" 6" | 99070 | |
| | X-Ray Copies x's | 99080 | 25 |
| | Collar: Soft Cervical | L0120 | 35 |
| | Crutches | E0114 | 75 |
| | Dressing S M Lg | | |
| | Dressing Change | A6251 | 15 |
| | Eye Pad, Sterile, each x's | A6410 | 3 |
| | Eye Patch, Occlusive each x's | A6412 | 20 |
| | Foley Catheter (2) or (3) way silicone | A4344 | 15 |
| | Sling(s) x's | A4565 | 10 |
| | Surgical Tray | A4550 | 65 |
| | Sutures: Ethilon Silk Proline Vicryl | A4649 | 30 |
| | Foley Tray | | 75 |
| | Dermabond | | |
| | Gel Foam | A6242 | 20 |
| | Knee Support S M L | K1830 | |
| | Knee Sleeve Open S M L | L1825 | 20 |
| | Cast Shoe S M L | L1902 | 45 |
| | Air Cast Ankle | L6020 | 35 |
| | Collar Stiff Neck | L0172 | |
| | Clavical Strap | L3650 | 25 |
| | Finger Splint | A4570 | 10 |
| | Ortho Glass by____" | | |
| | Scapula X-ray | | 105 |

DATE | TIME | PATIENT | REASON | PRIOR BALANCE

DIAGNOSIS
1.
2.
3.
4.

TICKET NO. | DR# | DOCTOR | LOCATION | D.O.B | TODAY'S CHARGE

PATIENT NO. | RESPONSIBLE PARTY | PHONE # | REFERRING DR. | ADJUSTMENTS

SEX M F | ADDRESS | CITY/STATE | ZIP CODE | PHYSICIAN SIGNATURE

RECAP | OVER 90 | OVER 60 | OVER 30 | CURRENT | TOTAL DUE | PT SC CS | TODAY'S PAYMENT | NEXT APPOINTMENT | NURSE'S INIT.

INSURANCE COMPANY | BA SCT POLICY I.D.

AMOUNT & CHOICE: $

RELATIONSHIP TO INSURED: SELF SPOUSE CHILD OTHER

☐ Cash

Chk.#______

Cred. Card

I, and/or the above named patient, have applied for MediCaid. Yes No

Signature ______ Date ______

ASSIGNMENT AND RELEASE: I hereby authorize my insurance benefits to be paid directly to the physician and I am financially responsible for non-covered services. I also authorize the physician to release any information required in the processing of this claim.

Signature ______ Date ______

Revised 07/05

Case: 1:10-cv-01740 Document #: 38-3 Filed: 04/11/11 Page 41 of 45 PageID #:293

US Cellular

EXHIBIT 18
PENGAD 800-631-6989
2-23-11


Account Number: 713759665
Bill Date: 2/18/08
Invoice Number: 713759665-011

## Detail of Roaming Charges - WIDE AREA 1000
BEVERLY BALLARD

773-876-8743

LAS VEGAS NV - B (00064 )

| Line | Date | Time | Calls To | | Number Called | Period | Min | Airtime Charge | Toll Charge | Add'l Charge | Int'l Roam Taxes | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1/21 | 3:43PM | MAIL | CL | 773-876-8743 | PK | 2.00 | 0.00 | | | 0.00 | 0.00 |
| 2 | 1/21 | 5:39PM | CHICAGO | IL | 773-972-6170 | PK | 5.00 | 0.00 | | | 0.00 | 0.00 |
| 3 | 1/21 | 5:53PM | GOLDEN VLY | MN | 651-276-6130 | PK | 1.00 | 0.00 | | | 0.00 | 0.00 |
| 4 | 1/21 | 5:55PM | GOLDEN VLY | MN | 651-276-6130 | PK | 2.00 | 0.00 | | | 0.00 | 0.00 |
| 5 | 1/21 | 6:02PM | GOLDEN VLY | MN | 651-276-6130 | PK | 1.00 | 0.00 | | | 0.00 | 0.00 |
| 6 | 1/21 | 7:04PM | GOLDEN VLY | MN | 651-276-6130 | OP | 1.00 | 0.00 | | | 0.00 | 0.00 |
| 7 | 1/21 | 8:10PM | CHICAGO | IL | 773-443-9859 | OP | 4.00 | 0.00 | | | 0.00 | 0.00 |
| 8 | 1/22 | 6:32AM | CHICGOZN10 | IL | 773-503-4943 | OP | 20.00 | 4.14 | | | 0.00 | 4.14 |
| 9 | 1/22 | 9:46AM | INCOMING | CL | 773-876-8743 | PK | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 10 | 1/22 | 9:47AM | INCOMING | CL | 773-876-8743 | PK | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 11 | 1/22 | 9:48AM | CHICAGO | IL | 312-742-5121 | PK | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 12 | 1/22 | 10:31AM | INCOMING | CL | 773-876-8743 | PK | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 13 | 1/22 | 1:23PM | CHICAGO | IL | 312-747-0402 | PK | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 14 | 1/22 | 1:30PM | INCOMING | CL | 773-876-8743 | PK | 3.00 | 2.07 | | | 0.00 | 2.07 |
| 15 | 1/22 | 5:14PM | INCOMING | CL | 773-876-8743 | PK | 3.00 | 2.07 | | | 0.00 | 2.07 |
| 16 | 1/22 | 6:19PM | GOLDEN VLY | MN | 651-276-6130 | PK | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 17 | 1/22 | 7:16PM | GOLDEN VLY | MN | 651-276-6130 | OP | 5.00 | 3.45 | | | 0.00 | 3.45 |
| 18 | 1/22 | 8:08PM | INCOMING | CL | 773-876-8743 | OP | 3.00 | 2.07 | | | 0.00 | 2.07 |
| 19 | 1/22 | 8:11PM | CHICGOZN10 | IL | 773-503-4943 | OP | 21.00 | 14.49 | | | 0.00 | 14.49 |
| 20 | 1/22 | 8:13PM | CALL WAIT | | 773-876-8743 | OP | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 21 | 1/22 | 8:35PM | INCOMING | CL | 773-876-8743 | OP | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 22 | 1/22 | 8:36PM | CALL WAIT | | 773-876-8743 | OP | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 23 | 1/22 | 8:37PM | CALL WAIT | | 773-876-8743 | OP | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 24 | 1/22 | 8:41PM | INCOMING | CL | 773-876-8743 | OP | 3.00 | 2.07 | | | 0.00 | 2.07 |
| 25 | 1/22 | 8:55PM | GOLDEN VLY | MN | 651-276-6130 | OP | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 26 | 1/23 | 12:03AM | CHICAGO | IL | 773-617-8236 | OP | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 27 | 1/23 | 2:31AM | CHICAGO | IL | 773-617-8236 | OP | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 28 | 1/23 | 4:56AM | INCOMING | CL | 773-876-8743 | OP | 19.00 | 13.11 | | | 0.00 | 13.11 |
| 29 | 1/23 | 7:00AM | INCOMING | CL | 773-876-8743 | PK | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 30 | 1/23 | 9:33AM | CHICAGO | IL | 312-742-5121 | PK | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 31 | 1/23 | 9:34AM | CHICAGO | IL | 312-747-0402 | PK | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 32 | 1/23 | 10:05AM | INCOMING | CL | 773-876-8743 | PK | 15.00 | 10.35 | | | 0.00 | 10.35 |
| 33 | 1/23 | 10:24AM | CHICGOZN10 | IL | 773-503-4943 | PK | 3.00 | 2.07 | | | 0.00 | 2.07 |
| 34 | 1/23 | 10:56AM | CHICGOZN07 | IL | 773-241-6369 | PK | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 35 | 1/23 | 11:37AM | INCOMING | CL | 773-876-8743 | PK | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 36 | 1/23 | 11:43AM | GOLDEN VLY | MN | 651-276-6130 | PK | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 37 | 1/23 | 11:44AM | INCOMING | CL | 773-876-8743 | PK | 18.00 | 12.42 | | | 0.00 | 12.42 |
| 38 | 1/23 | 12:03PM | CHICAGO | IL | 773-443-9859 | PK | 8.00 | 5.52 | | | 0.00 | 5.52 |
| 39 | 1/23 | 12:24PM | INCOMING | CL | 773-876-8743 | PK | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 40 | 1/23 | 1:56PM | INCOMING | CL | 773-876-8743 | PK | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 41 | 1/23 | 2:52PM | LAS VEGAS | NV | 702-416-7494 | PK | 4.00 | 2.76 | | | 0.00 | 2.76 |
| 42 | 1/23 | 3:36PM | INCOMING | CL | 773-876-8743 | PK | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 43 | 1/23 | 3:55PM | INCOMING | CL | 773-876-8743 | PK | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 44 | 1/23 | 3:58PM | CHICAGO | IL | 773-567-0693 | PK | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 45 | 1/23 | 4:22PM | INCOMING | CL | 773-876-8743 | PK | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 46 | 1/23 | 4:30PM | INCOMING | CL | 773-876-8743 | PK | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 47 | 1/23 | 4:31PM | GOLDEN VLY | MN | 651-276-6130 | PK | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 48 | 1/23 | 4:35PM | GOLDEN VLY | MN | 651-276-6130 | PK | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 49 | 1/23 | 4:36PM | GOLDEN VLY | MN | 651-276-6130 | PK | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 50 | 1/23 | 4:40PM | GOLDEN VLY | MN | 651-276-6130 | PK | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 51 | 1/23 | 5:56PM | INCOMING | CL | 773-876-8743 | PK | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 52 | 1/23 | 6:04PM | INCOMING | CL | 773-876-8743 | PK | 3.00 | 2.07 | | | 0.00 | 2.07 |
| 53 | 1/23 | 7:30PM | CHICAGO | IL | 773-960-5243 | OP | 26.00 | 17.94 | | | 0.00 | 17.94 |
| 54 | 1/23 | 7:58PM | CHICAGO | IL | 312-245-7535 | OP | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 55 | 1/23 | 8:01PM | CHICGOZN10 | IL | 773-503-4349 | OP | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 56 | 1/23 | 8:05PM | CHICAGO | IL | 773-617-8236 | OP | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 57 | 1/23 | 8:15PM | GOLDEN VLY | MN | 651-276-6130 | OP | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 58 | 1/23 | 8:18PM | CHICAGO | IL | 312-401-0429 | OP | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 59 | 1/23 | 8:32PM | INCOMING | CL | 773-876-8743 | OP | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 60 | 1/23 | 8:43PM | INCOMING | CL | 773-876-8743 | OP | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 61 | 1/23 | 8:56PM | GOLDEN VLY | MN | 651-276-6130 | OP | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 62 | 1/23 | 8:57PM | INCOMING | CL | 773-876-8743 | OP | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 63 | 1/23 | 8:58PM | GOLDEN VLY | MN | 651-276-6130 | OP | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 64 | 1/23 | 9:12PM | LAS VEGAS | NV | 702-416-7494 | OP | 2.00 | 1.38 | | | 0.00 | 1.38 |
| 65 | 1/24 | 1:48AM | INCOMING | CL | 773-876-8743 | OP | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 66 | 1/24 | 1:49AM | GOLDEN VLY | MN | 651-276-6130 | OP | 1.00 | 0.69 | | | 0.00 | 0.69 |
| 67 | 1/24 | 2:47AM | CHICAGO | IL | 312-401-0429 | OP | 4.00 | 2.76 | | | 0.00 | 2.76 |

# CHICAGO PARK DISTRICT - TIME REPORT FOR EMPLOYEES

…YEE NAME: Ballard Beverly    LOCATION: Ridge    POSITION: N.T.    PAY PERIOD: 1-24-08 2-6-08

(PLEASE CIRCLE) MONTHLY    HOURLY    *A - EMPLOYEE    ITINERANT    SOCIAL SECURITY NUMBER

REPORT PREPARATION INSTRUCTIONS: This record is to be signed by the employee, and examined and approved by the Supervisor at the end of the pay period. Prior approval for overtime is required.

*TOTAL HOURS COLUMN DOES NOT REFLECT ACTUAL HOURS WORKED FOR "A" EMPLOYEES. TOTAL HOURS FOR "A" EMPLOYEES MUST = 80.

| WEEKDAY | EMPLOYEE SIGNATURE IN | TIME IN | TIME OUT | TIME IN | TIME OUT | EMPLOYEE SIGNATURE OUT | [illegible] (SUPERVISOR USE ONLY) | [illegible] | [illegible] | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|
| THU- 1-24 | | | | | | | | | | |
| FRI- 1-25 | | | | | | | | 7.5 | 7.5 | |
| SAT- 1-26 | | | | | | | | | | |
| SUN- 1-27 | | | | | | | | | | |
| MON- 1-28 | [signature] | 9:00 | | | 9:00 | [signature] | | 6.5 | 6.5 | |
| TUE- 1-29 | [signature] | 1:00 | | | 9:00 | [signature] | 6.5 | | 6.5 | |
| WED- 1-30 | [signature] | 2:00 | | | 9:00 | [signature] | 7.5 | | 7.5 | |
| THU- 1-31 | [signature] | 1:00 | 4 | 5:00 | 9:00 | [signature] | 6.5 | | 6.5 | |
| FRI- 2-1 | | | | | | | 7.5 | | 7.5 | |
| SAT- 2-2 | | | | | | | | | | |
| SUN- 2-3 | [signature] | 9:00 | | | 4:00 | [signature] | 6.5 | | | |
| MON- 2-4 | [signature] | 2:00 | | | 9:00 | [signature] | 6.5 | | 6.5 | |
| TUE- 2-5 | [signature] | 1:00 | | | 9:00 | [signature] | 7.5 | | 6.5 | |
| WED- 2-6 | [signature] | 2:00 | | | 9:00 | [signature] | 6.5 | | 7.5 | |
| [illegible] | | | | | | | | | 6.5 | |

Beverly Ballard

Reviewed By Supervisor
I have examined and approved this record for above named individual under my supervision.

Name: John MacAskill
Title: Park Supervisor
Supervisor Signature: [signature]

Location # 812
Cost Center # 8450
Employee # 162136

WHITE - REGION    YELLOW - EMPLOYEE    PINK - PARK

## BENEFIT TYPE CODES

| | |
|---|---|
| Holiday | HL |
| Sick Pay | SP |
| FMLA-sick pay | FS |
| Vacation | VC |
| FMLA-vacation | FV |
| FMLA-personal day | FP |
| Military Leave Vacation | MV |
| Floating Holiday | FH |

| | |
|---|---|
| Military Leave Personal | MP |
| Personal Day | PD |
| FMLA -STIME | PE |
| Excused Absence | EA |
| Unexcused Absence | UA |
| Temporary Disability | TD |
| FMLA w/o pay | FN |

| | |
|---|---|
| Suspension | SU |
| Military Leave w/o Pay | MN |
| Injury on Duty | ID |
| Jury Duty w/o pay | JN |
| Funeral Leave | FL |
| Jury Duty | JD |
| F - Time | FT |
| Administrative Leave | AL |

EXHIBIT 9
PENGAD 800-631-6989
2-23-11

283

EXHIBIT 20
PENGAD 800-631-6989
2-23-11

**chicago park district**

Administration Office
541 North Fairbanks
Chicago, Illinois 60611
t (312) 742-PLAY
(312) 747-2001 TTY
www.chicagoparkdistrict.com

Board of Commissioners
Gery J. Chico
*President*

Bob Pickens
*Vice President*

Dr. Margaret T. Burroughs
M. Laird Koldyke
Reverend Daniel Matos-Real
Cindy Mitchell
Rouhy J. Shalabi

General Superintendent
& CEO
Timothy J. Mitchell

City of Chicago
Richard M. Daley
*Mayor*

**CHICAGO PARK DISTRICT**
**CORRECTIVE ACTION MEETING NOTICE**

JOB TITLE: Natatorium Instructor (H) EMPLOYEE NUMBER: 102136

WORK LOCATION: Ridge Park UNION: SEIU-Local 73

DATE: February 7, 2008

TO: Beverly Ballard
11829 S. Ashland Avenue
Chicago, IL 60643

You are hereby directed to be in attendance at a Corrective Action Meeting that was **scheduled for Thursday, February 28, 2008 at 2:00pm.**

This meeting will take place at **THE CHICAGO PARK DISTRICT, ADMINISTRATION OFFICE, 541 N. FAIRBANKS, CHICAGO, IL 60611, 4TH FLOOR** and will concern the following allegation(s):

1. Failure to be present for duty at assigned time and place with proper authorization to be absent on January 21, 22, 23, 24, and 27, 2008.
2. Falsification of a daily attendance record on January 29, 2008.
3. Failure to comply with the policies and procedures of the Chicago Park District and the written policies of your department or unit on January 19, 2008.

You are entitled to Union Representative at this meeting. You will be given a chance to present your explanation of the allegation made against you.

Upon a showing of good cause, the Union or the employee may request an extension of not more than three (3) business days.

DEPARTMENT/DIVISION HEAD: Randy Ernst

cc: Mary Ann Rowland, Human Resources Manager
Janet McDonough, Beaches & Pools Manager
Derrick Smith, Counsel
Union, SEIU-Local 73

Chicago Park District
come out and play

Printed on recycled paper with soy ink

EXHIBIT 21 2-23-11

PENGAD 800-631-6989

chicago park district

Administration Office
541 North Fairbanks
Chicago, Illinois 60611
t (312) 742-PLAY
(312) 747-2001 TTY
www.chicagoparkdistrict.com

Board of Commissioners
Gery J. Chico
*President*

Bob Pickens
*Vice President*

Dr. Margaret T. Burroughs
M. Laird Koldyke
Reverend Daniel Matos-Real
Cindy Mitchell
Rouhy J. Shalabi

**General Superintendent & CEO**
Timothy J. Mitchell

of Chicago
..ard M. Daley
*Mayor*

# CHICAGO PARK DISTRICT

## DISCIPLINARY MEETING DISPOSITION

DATE OF SERVICE: March 21, 2008

TO: Beverly Ballard
11829 S. Ashland Avenue
Chicago, IL 60643

Employee Number: 102136 Job Title: Natatorium Inst. (H)

Region: Administration / Beaches & Pools Union: SEIU-Local 73

## DETERMINATION:

Pursuant to the rules and procedures of the Personnel Board of the Chicago Park District, you are hereby terminated as of today, Friday, March 21, 2008 for cause:

**Violation of the Code of Conduct of the Chicago Park District, including but not necessarily limited to Section(s):**

**I General A.**

**An employee shall be present for duty at assigned times and places, except with proper authorization to be absent. Employees shall comply with their departmental policy on the length of time any leave or excused absence is to be requested in advance, but, in no event, shall the request be made less than one business day before the leave or absence begins. If the absence is due to illness, injury, or other disclosed emergency, notification may occur on the day of the absence, provided the absence is communicated to the employee's immediate supervisor, the employee in charge of the work site, or other designated employee or office before or within one hour of his/her starting time. If the employee's circumstances or physical condition makes such reporting impossible or if no employee is on duty at the work site at that time and there is no designated alternative reporting arrangement, the communication must be made as soon as reasonably possible.**

On January 21, 22, 23, 24, and 27, 2008 you were absent without authorization, after having been denied the request to take the time off. You were absent these days in defiance of advisories from your supervisor that your request was denied.

CHICAGO PARK DISTRICT
come out and play

Printed on recycled paper with soy ink

**chicago park district**

Administration Office
541 North Fairbanks
Chicago, Illinois 60611
t (312) 742-PLAY
(312) 747-2001 TTY
www.chicagoparkdistrict.com

**Board of Commissioners**
Gery J. Chico
*President*

Bob Pickens
*Vice President*

Dr. Margaret T. Burroughs
M. Laird Koldyke
Reverend Daniel Matos-Real
Cindy Mitchell
Rouhy J. Shalabi

**General Superintendent & CEO**
Timothy J. Mitchell

of Chicago
..nard M. Daley
*Mayor*

CHICAGO PARK DISTRICT
come out
nd play

**I General C.**

**An employee shall obey the orders of his/her supervisor or other employee in the line of supervision properly given in the course of employment.**

On January 21, 22, 23, 24, and 27, 2008 you were absent without authorization, after having been denied the request to take the time off. You were absent these days in defiance of advisories from your supervisor that your request was denied.

**I General M.**

**An employee shall comply with any safety directive, order, memorandum, regulation, statute, or ordinance issued by 1) his/her supervisor or employee within the line of supervision; 2) the Safety, Medical, Law, or Personnel and Civil Service Departments; 3) the persons with supervisory responsibility for the park, beach, pool, or facility in question; 4) the General Superintendent; or 5) the Board of Commissioners. An employee shall also comply with all applicable federal, state or local safety laws.**

On January 21, 22, 23, 24, and 27, 2008 you were absent without authorization, after having been denied the request to take the time off. You were absent these days in defiance of advisories from your supervisor that your request was denied.

**Guidelines for Discipline**

**Part 1 Group A # 21**

**Absence from work without notice or authorization for over two consecutive days by an employee whose position involves substantial responsibility for protecting the health, safety and security of patrons. (The Park District has determined that the following job titles involve such responsibility: Lifeguard Captain, Senior Lifeguard, Lifeguard, First Aide Attendant and Security Guard);**

**Part 2 Group A**
**Misconduct:**

**Termination for first offense.**

Printed on recycled paper
with soy ink