# Tab B

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEVERLY BALLARD,<br>Plaintiff,<br>vs.<br>CHICAGO PARK DISTRICT,<br>Defendant. | )<br>)<br>)<br>)<br>) No. 10 C 1740<br>)<br>)<br>)<br>) |

The deposition of ERIC FISCHER, called by the Plaintiff for examination, taken pursuant to notice and pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before Monica Kim, Certified Shorthand Reporter, Registered Professional Reporter, and Notary Public, at 230 West Monroe Street, Suite 2330, Chicago, Illinois, commencing at 9:34 a.m. on March 1, 2011.

Q. Did any of these depositions involve a claim under the Family Medical Leave Act?

A. No.

MR. FLORES: Excuse me, Paul.

MR. RYAN: Yeah.

MR. FLORES: I hate to break into your line of questioning, I forgot to tell you that Nelson Brown doesn't intend to come at that later time. Is that --

MR. RYAN: Yeah, sure.

BY MR. RYAN:

Q. So do you remember what any of these depositions were about?

A. I believe they were discrimination cases against the Park District.

Q. Do you remember what kind of discrimination?

A. Some were for sex and race.

Q. In any of those claims or any of those cases, did the employee allege a violation of the Family Medical Leave Act?

A. I don't believe so.

Q. And you're currently employed by the Park District?

A. Yes.

Q. What's your current job title?

A. Assistant manager of beaches and coast.
Q. How long have you had that job?
A. Over ten years.
Q. What are your job duties as assistant manager of beaches and pools?
A. To direct and oversee all aquatic programming at the beaches and pools and oversee all aquatic staff.
Q. Do you handle requests for time off from aquatic staff?
A. Yes.
Q. Are you the only assistant manager of beaches and pools?
A. Yes.
Q. Who is your supervisor?
A. Janet McDonough.
Q. Who is Janet McDonough's supervisor?
A. Matt Marino.
Q. What's his job title?
A. Chief program officer, interim chief program officer.
Q. Was this the chain of command back in 2007 and 2008?
A. No.
Q. What was different in 2007 and 2008?

A. In 2007, 2008, there was an additional assistant manager.
Q. Who was that?
A. Kay Dahlberg.
Q. How do you spell the last name?
A. D A H L B E R G, I believe.
Q. Did she have any supervisory role over Beverly Ballard?
A. Yes.
Q. Was it the same type of supervisory role that you had over Beverly?
A. We had different duties.
Q. How did your duties differ before with regard to Beverly?
A. I believe Kay Dahlberg was specifically over Sports 37 program.
Q. What's Sports 37?
A. It's a lifeguard training program in the Chicago Public Schools that we staff.
Q. Now, were your -- Well, was Kate involved -- Was it Kate or Kay?
A. Kay.
Q. Okay. K A Y?
A. Yes.

Q. Was Ms. Dahlberg involved in the decision to terminate Ms. Ballard?

A. No.

Q. Were your job duties any different in 2007 and 2008 than they are now?

A. She no longer works for the Chicago Park District.

Q. What about your job duties? Are they the same as they were in 2007 and 2008?

A. I have more duties now.

Q. What additional duties do you have?

A. I took on all the duties that Kay Dahlberg had.

Q. Now, Beverly Ballard was an natatorium instructor for the Park District; is that right?

A. Yes.

Q. That was her job title when she was let go?

A. Yes.

Q. You had supervisory authority over Beverly, correct?

A. Correct.

Q. You had authority to discipline her?

A. Yes.

Q. Did you have authority to terminate her?

an natatorium instructors?

A. Yes, I did.

Q. Okay. And who provided you with the time sheets?

A. I'm trying to remember back then. It's changed a couple of times. I can't remember when we made one of the changes, so it was either aquatic supervisors, if we still had them at that time. If we didn't have aquatic supervisors, it was submitted by the region.

Q. Do you know who Beverly's aquatic supervisor was in 2007 and 2008?

A. It would be a guess. I'm not sure. It might be Bob Cherry.

Q. Do you know who Beverly's -- what did you say -- region supervisor?

A. It would have been a staff person from the region. I wouldn't know who that was.

Q. So I understand it, what was the reporting structure that applied to Beverly in terms of, you know, who her supervisors were?

A. The immediate supervisor is the park supervisor. They're in charge of the entire location which encompasses the pool and their staff.

don't remember is an okay answer.

A. I don't remember.

Q. But --

A. I don't remember.

Q. Okay. Now, you said that there were a couple of different ways that you may have received time sheets; is that correct?

A. Yes.

Q. And when you received the time sheets, were they in a payroll envelope?

A. Back then, some -- there was -- information would come in scattered.

Q. What do you mean by that?

A. There would be time sheets combined from different locations. There may be information in an envelope coming from one location. The area managers -- I mean, area supervisors had multiple locations, so they might have taken all the information, combined it into one clip or one envelope, or they were individual. There was no set standard.

Q. Was it your job to sort all that stuff out to make sure that payroll was completed properly?

A. The time sheets were all corrected by me.

Q. Now, did you ever find any other types of

present for duty at the assigned time and place with proper authorization to be absent on November 21st, 2007. Do you see that?

A. Yes, I do.

Q. Do you know why Beverly was not present for duty on November 21st of 2007?

A. No.

Q. Do you recall having any conversations with anyone about why Beverly was absent that day?

A. No.

MR. RYAN: Go off the record for just a sec.

(Discussion off the record.)

BY MR. RYAN:

Q. I'm going to show you what has been marked as Deposition Exhibit 12. Do you recall this document?

A. Yes.

Q. Is this the leave request form that you referred to a couple minutes ago?

A. Yes.

Q. When did you first receive this leave request form?

A. I couldn't tell you the date.

Q. It appears to have been faxed on January 15th, 2008. Does that refresh your recollection?

A. Yes, it would be around there then.
Q. Now, this is not a copy of the original leave request form because it has this -- this other -- what appears to be, like, a Post-it note at the bottom --
A. Yes.
Q. -- with a handwritten note?
Is that your writing?
A. It is.
Q. What did you write on this document?
A. I'm sorry. On the leave request or the note?
Q. On the note.
A. "Denied, not enough benefit time, location not covered," and then I signed it.
Q. Okay. Now, what kind of benefit time were you referring to in your note?
A. I believe it was PD, personal time.
Q. Why did you believe that Beverly was requesting PD?
A. I can't tell from here, but at that time I felt that's what was checked.
Q. Why did you think that was checked?
A. They have different options on here, and it was marked. I thought that would have also been the only other time she would have been able to use or have.

She wasn't a monthly employee, so she didn't have vacation or F time, so she had either PD to use ...

Q. Now, did you talk to her about why she was requesting January 21st through January 28th off of work?

A. No.

Q. Did you talk to anyone about that before you denied this request?

A. No.

Q. Before you denied this request, did anyone tell you that Beverly had been granted -- Strike that.

Before you denied this request, did anyone tell you that Beverly was going to accompany her mother to Las Vegas as her caregiver?

A. I don't think so.

Q. Would anything refresh your recollection?

A. I'm not sure.

Q. So prior to you denied -- your denial of this leave request, did Beverly ever tell you, "I'm going on a trip to Las Vegas"?

MR. FLORES: You mean personally?

MR. RYAN: Yeah.

BY THE WITNESS:

A. I don't think so, no.

Q. Did anyone tell you that Beverly was planning on taking a trip to Las Vegas prior to the time you denied this request?

A. No.

Q. Leave requests like the one that we have in Exhibit 12 are supposed to be sent to you?

A. Yes.

Q. And there's an option on this leave request form for FMLA leave; is that right?

A. Yes.

Q. So if Beverly wanted to take an FMLA leave, it was appropriate for her to make that request to you?

A. That would go to HR.

Q. Why does the leave request form have an option to select FMLA leave?

MR. BROWN: Objection, calls for speculation.

MR. FLORES: You can answer.

BY MR. RYAN:

Q. You can answer if you know.

A. Okay. I don't know.

Q. So in your note you wrote, "Denied, not enough benefit time, location not covered," right?

A. Yes.

Q. And then you signed the note, right?

A. Can you say that again?
Q. Are there any types of leave where an employee only has to give five day's notice before the first day of leave?
A. I'm not -- I'm sorry. I'm not understanding your question.
Q. Are there any types of -- you know, for instance, if an employee says, you know, on a -- on a -- on a Thursday or on a Tuesday, "I want to take leave, you know, next Tuesday, you know, I'm giving you seven day's notice," are there any leaves where that amount of time is appropriate?
A. We require five day's notice.
Q. Five day's notice?
A. Yes.
Q. So what kinds of leaves require five day's notice?
A. V, PD, F.
Q. What does V mean?
A. Vacation. Monthly employees have that.
Q. And what is PD leave, personal day?
A. Personal time, yes, personal day.
Q. And the last one was what?
A. F.

Q. If a Park District employee's supervisor is placed on notice that the employee has a serious health condition that qualifies for FMLA leave, is the supervisor required to advise the employee of her right to protected leave?

A. I don't know what you mean by "on notice," to start with.

Q. Well, if, for instance, one of your subordinates tells you that they are in the hospital with meningitis and they have to be there for a week to receive treatment for that, is it your understanding that you have any obligation to advise them of any FMLA rights that they have?

A. If an employee brought that to my attention, I would tell them they need to give us documentation. I would turn it in to HR, or they can turn it in straight to HR.

Q. Now, if a supervisor learns that an employee needs to be absent to care for a spouse or a child or a parent with a serious health condition, is that supervisor required to give them advice as to their -- as to their rights to leave?

A. I believe the supervisor is allowed to let them use SP and then again request documentation that

would go to HR -- have them send it directly to HR.

Q. What is SP again?

A. Sick pay.

MR. RYAN: Let me go through my notes. We'll take a short break. We'll be done pretty soon.

(A short break was had.)

MR. RYAN: At this time, I have no further questions.

MR. FLORES: I have some questions.

CROSS-EXAMINATION

BY MR. FLORES:

Q. Mr. Fischer, what types of discipline could you render in 2007 and 2008?

A. Verbal reprimands and written reprimands.

Q. Has that policy changed at all?

A. Since then, the reprimand -- written reprimands would go down to HR for signature prior to going out.

Q. Now, at any point as an assistant manager of beaches and pools, do you handle or decide FMLA requests?

A. No.

Q. Now, if you ever believed you were to receive an FMLA request, what would be your next step?

# LEAVE REQUEST FORM

To: [illegible] Date: [illegible]

Employee's Name: [illegible] Dept./Div.: [illegible]

Job Title: [illegible] Work Location: [illegible]

Social Security No.: Region: [illegible]

## REASON FOR LEAVE

( ) Vacation
( ) Compensatory Leave (F-Time)
( ) Personal Day
( ) Sick Leave/Maternity Leave
( ) Administrative Leave
( ) Funeral Leave (AD)
( ) Court Leave (Jury Duty)
( ) Military Leave
( ) Leave Without Pay
( ) Other
( ) FMLA (attach required forms)

Explanation, if necessary: [illegible]

## LEAVE REQUESTED:

From: Date [illegible] Time [illegible] A.M. / P.M. Number of Hours on Leave [illegible]

To: Date [illegible] Time [illegible] A.M. / P.M. Number of Working Days on Leave [illegible]

I recommend that this leave be approved ( ) with pay. I have verified that the above benefit time is available.
I recommend that this leave be approved ( ) without pay.

Time Balance Confirmed By: Date:

Supervisor's Signature: [signature] [illegible] Date: [illegible]

Department/Region Manager's Signature: Date:

## FOR ADMINISTRATIVE LEAVE REQUESTS

General Superintendent and CEO

SOME LEAVES ARE SUBJECT TO APPROV...

HR Dept. – 10
Rev. 6/17/98

White ...

Denied
Not enough benefit time.
Location not covered.
[signature]

EXHIBIT
12
3/1/11 Fischer

CPD BALLARD 11