# Tab C

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BEVERLY BALLARD, | ) | |
| Plaintiff, | ) | |
| -vs- | ) | No. 10 C 1740 |
| CHICAGO PARK DISTRICT, | ) | |
| Defendant. | ) | |

The deposition of MARY ANN ROWLAND called by the Plaintiff for examination, taken pursuant to notice and pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before Lisa M. Walas, Certified Shorthand Reporter and Notary Public, at 230 West Monroe Street, Suite 2330, Chicago, Illinois, commencing at 1:43 p.m. on the 2nd day of March, A.D., 2011.

A. Yes.
Q. Were you aware that the FMLA provided that eligible employees could take job-protected leave to care for a family member with a serious health condition?
A. Yes.
Q. Were you aware that the FMLA provided that an eligible employee could take leave on an intermittent basis?
A. Yes.
Q. If an employee had an intermittent FMLA certification, what procedure was the employee supposed to follow if they needed to take time off?
A. They needed to contact me as their human resource manager. We would discuss the FMLA. I would tell the employee that they need to fill out the FMLA papers and to also have a doctor's note submitted with the FMLA papers and to send everything back to me.
Now, I would mail the FMLA papers out two separate packets: one regular mail and one certified mail. The certified would be the original, and the regular mail would be stamped "Copy" on it.
In turn, the employee needed to fill all that out, along with the doctor's note and the doctor

filling a portion of the FMLA out, and to return it to me. If this was approved, I would in turn send another set of letters, certified and regular mail, out to the employee stating that it was approved.

Q. Okay. Did you ever discuss this procedure with Beverly Ballard?

A. Yes.

Q. When did you discuss this procedure with Beverly?

A. It was approximately December of '08.

Q. Okay. Ms. Ballard was terminated in March of '08. Do you mean December of '07?

A. Excuse me. December of '07. I'm sorry.

Q. No problem.

Okay. Do you remember the date in December of '07?

A. Say around the middle of December.

Q. Okay. Now, where were you when this conversation took place?

A. On the telephone at my office, which is located at the administration building.

Do you need the address?

Q. Is that 541 North Fairbanks?

A. That's correct.

Q. Okay. And was anyone else present in your office with you?

A. Everyone was located at their desk.

Q. Okay.

A. When I took over the duties of beaches and pools in September of '07, Mary Sieva (phonetic), the human resource manager who was previously in charge of beaches and pools, brought me the attention of the -- all the employees that I needed to be aware of that were either on FMLA or that were going on FMLA or who had requested and all the files and everything. I was told that Ms. Ballard had requested FMLA previous. Mary Sieva had mailed out FMLA papers, but they were never received back. And then when I was taking over beaches and pools, I spoke to Ms. Ballard again and told her that I would mail the paperwork out. And, again, it was certified and regular mail.

Q. Okay. Now, Mary -- When did Mary tell you that Beverly had previously requested FMLA, do you remember?

A. It would have been previous to before I had taken over beaches and pools duties, previous to September of '07.

Q. Okay. Now, let's talk about what was said

parent or a child or a loved one -- or a spouse, what should the supervisor do in that situation?

A. That's almost the same thing that -- You asked me the same thing --

Q. Yeah, it's the same with the health condition.

MR. FLORES: I'm going to go ahead and object as to temporal scope.

But you can go ahead and answer.

BY MR. RYAN:

Q. Yes, you can answer if you understand the question.

A. They need to tell the employee to contact human resources. They're not authorized to approve any FMLA.

Q. Right. Would you expect the supervisor to also alert human resources to the fact that the employee needs time off to care for a family member?

A. No. They don't take it in their hands to do that. They would tell the employee to contact HR.

Q. Okay. I'm going to show you what's been marked as Deposition Exhibit 3. For the record, this is a Chicago Park District Corrective Action Meeting Notice dated December 19, 2007; and it relates to a

meeting scheduled for Thursday, January 3, 2008, concerning Beverly Ballard. Is that an accurate description of this document?

A. Yes, it is.

Q. Okay. Now, there was a corrective action meeting regarding Beverly Ballard on January 3, 2008; is that correct?

A. That's correct.

Q. I'm going to show you what's been marked as Deposition Exhibit 4.

(Witness peruses document.)

BY MR. RYAN:

Q. Deposition Exhibit 4 is a page of handwritten notes. Do you recognize this document?

A. Yes.

Q. Okay. Is this a document that you prepared?

A. Yes.

Q. Okay. And when did you write these notes in Exhibit 4?

A. After I completed my CAM with Beverly Ballard.

Q. Did you write these on January 3, 2008?

A. Yes.

Q. Okay. Was anyone -- Strike that.
At the corrective action meeting that took place on January 3, 2008, Beverly Ballard was present, correct?
A. Correct.
Q. Her union representative, Charles Harper, was present, correct?
A. Correct.
Q. And you were present; is that correct?
A. That's correct.
Q. Okay. Can you please read for the record what you wrote in these notes?
A. Sure. It's kind of scribbly, but these are my own words, my words of what took place at the CAM. The reason that this CAM took place was, again, failed to be present for duty at assigned time and place with proper authorization to be absent on November 21st --
Q. Okay. But for right now, can you just read what you wrote in here?
A. Sure. At the CAM, I asked Ms. Ballard why she was --
Q. First of all, let me just stop -- Let me just ask you -- All I want you to do is read verbatim what you wrote in these notes so we have it on the

corrective action meeting, you were -- the allegation against Beverly was that she was absent on November 21, 2007, right?

A. Right.

Q. Okay. And just so I'm clear, did she say she was absent because of her mother's terminal illness or because she had to pick up her daughter or because of a combination of the two things?

MR. FLORES: I'm going to object as to leading.

You can answer.

BY THE WITNESS:

A. I just wrote what she told, me.

Q. Okay. I mean, did you ask her why -- I'm assuming you asked her why she was absent, right?

A. That's correct.

Q. Okay. And she said "Because my mother is ill; she's terminally ill"?

A. She said to me her mother was terminally ill and her daughter got sick.

Q. Okay.

A. And I remember her saying -- that's why I wrote on here that I need the doctor's note -- that she took her daughter to the doctor.

Q. Okay.

A. That's why she missed her CAM.
Q. Okay. Did she miss a corrective action --
A. I mean, not that she didn't miss her CAM, that's why she didn't come to work that day. That's why she was written up.
Q. And what you wrote in her note was her explanation for why she was absent that day?
A. Right.
Q. And so after she informed you about her mother being terminally ill, that's when you felt that it was necessary to inform her that she could fill out FMLA paperwork for the purpose of taking care of her ill mother; is that correct?
A. Yes.
MR. RYAN: We're on No. 5, right?
MR. BROWN: Yes, 5.
THE WITNESS: Yes.
BY MR. RYAN:
Q. Okay. Let me show you what's been marked as Deposition Exhibit 5.
(Witness peruses document.)
BY MR. RYAN:
Q. For the record, this is a corrective action meeting notice dated January 11, 2008, relating to a

January 17, 2008 corrective action meeting for Beverly Ballard; is that right?

A. That's correct.

Q. Okay. And there was a corrective action meeting on January 17, 2008. I'll show you Exhibit 6. That may help you answer.

(Witness peruses document.)

BY MR. RYAN:

Q. Do you need time to review the document?

A. No.

Q. Let me just strike my last question, and I'll ask it again.

There was a corrective action meeting for Beverly on January 17, 2008, correct?

A. Correct.

Q. In -- And I've just handed you what's been marked as Exhibit 6. Do you recognize this document?

A. Yes.

Q. Okay. And what is Exhibit 6?

A. Are my notes from the --

Q. Go ahead. Finish.

A. My CAM notes from January 17, 2008, 2:00 p.m.

Q. To who?

and you were present; is that right?

A. That's correct.

Q. And do you know why Beverly was not present?

MR. BROWN: Objection, calls for speculation.

BY MR. RYAN:

Q. Go ahead and answer if you can.

A. Per my notes, she was no show, no call.

Q. Okay. So she didn't show up for the CAM?

A. That's correct.

Q. All right. Now, the CAM related to an absence on December 11, 2007; is that right? That's what the CAM notice says?

A. Oh, sorry. "Failed to be present for duty at assigned time and place on December 11, 2007."

Q. Yes. Did you ever make a determination as to where Beverly was on December 11, 2007, why she was not present at the assigned time?

A. There would have been a reason why I was holding this CAM.

Q. Right. I mean, did you ask Charles Harper, you know, why Beverly was absent that day?

A. Charles wouldn't have known that.

Q. Okay. Did you ever ask Beverly?

A. It's not up -- That's not my responsibility --

Q. Okay. So because --

A. -- to know where Beverly is on December 11th.

Q. But at the CAM -- I mean, the CAM --

A. She was a no show, no call; so I couldn't ask her.

Q. Okay.

A. There's been numerous times when I've held CAMs that the employee got stuck in traffic or whatever, they've always called. There was a no show, no call that day.

Q. Okay. I mean, I was just trying to find out if you ever did get an explanation for why Beverly wasn't present on December 11th; and my understanding is that you did not?

A. That's correct.

Q. Now, let's stay on Exhibit 6, your CAM notes. You wrote here that "Per Janet, Beverly Ballard requested a leave dated January 15, 2008." Did Janet tell you what the requested leave was for?

A. I don't recall.

Q. You don't recall if Janet explained to

Q. Okay. Do you recall anything else from that conversation?

A. No, I do not.

Q. Okay. Also in your notes --

A. Yes.

Q. -- do you see where it says "Per Janet, Beverly Ballard" and then in parentheses it says "See Attached"?

A. Yes.

Q. Okay. Do you recall what you attached to this note?

A. It would have been a leave request form --

Q. Okay.

A. -- requesting the leave of those dates.

Q. Let me show you what's been marked as deposition Exhibit 7.

(Witness peruses document.)

BY MR. RYAN:

Q. For the record, Deposition Exhibit -- Dep -- Strike that.

For the record, while I untie my tongue, Deposition Exhibit 7 is a Leave Request form; and there's also -- Attached to the Leave Request form is a handwritten note that says "Denied, not enough

benefit time, Location uncovered." Is that a fair description of this exhibit?

A. Yes.

Q. Now, is this the leave request form that you attached to the notes that I've marked as Exhibit 6?

A. Yes.

Q. Okay. I'd like to show you a document that's been marked Deposition Exhibit 8. For the record, this is a handwritten note dated January 15, 2008, and is numbered CPD Ballard 1182 in the bottom right-hand corner. Have you ever seen this document before?

A. Yes.

Q. Okay. Was this document also attached to the -- your note in Exhibit 6?

A. Yes.

Q. I'm going to show you what's been marked as Deposition Exhibit 9.

(Witness peruses document.)

BY MR. RYAN:

Q. Have you ever seen this document?

A. Yes.

Q. Okay. Is this -- Was this document also

attached to your January 17, 2008 CAM notes?

A. Yes.

Q. Okay. So Exhibits 7, 8, and 9 were the documents that you attached to the January 17, '08 CAM notes, correct?

A. Yes.

Q. Okay. When was the first time that you saw the document marked as Deposition Exhibit 7?

A. It would have been the same date, January 17th because that's where I have "See Attached."

Q. Okay. And when was the first time you saw Deposition Exhibit 8?

A. The same day.

Q. January 17th?

A. January 17, 2008.

Q. Okay. And when was the first time you saw Deposition Exhibit 9?

A. The same date, January 17th.

Q. January 17 ...

A. 2008.

Q. And just, again, so we're not -- so the record is clear, just let me finish my question before you answer.

A. Sorry.

Q. No problem.

All right. And when you received these documents marked as Exhibit 7, Exhibit 8, and Exhibit 9 back on January 17 2008, did you read them?

A. Yes.

Q. Okay. And did you discuss these documents with anyone at that time?

A. With Janet McDonough and Eric Fisher.

Q. Okay. To the best of your recollection, what was said during that conversation?

A. They presented me with the leave request and these two other documents. And Eric, of course, wrote down here "Denied, not enough benefit time," and "Location not covered." And we discussed, again, a Family Medical Leave, I mean, to go Las Vegas here; and she didn't have no benefit time.

Q. Okay. Did Mr. Fisher or Ms. McDonough tell you that she was requesting FMLA leave?

A. No.

Q. Okay.

A. Not at that time.

Q. Okay. Did you consider whether this request would qualify for FMLA leave on January 17,

'08?

A. Yes.

Q. Okay. And what was your determination at that time?

A. That this isn't covered under the Family Medical Leave Act.

Q. Okay. And when you reviewed these documents, which have been marked as Exhibit 7, Exhibit 8, and Exhibit 9 on January 17, 2008, was it your understanding that Ms. Ballard wanted to travel to Las Vegas with her mother?

A. Yes, because it states that right in this letter.

Q. Okay. And at that point in time, you were aware that Ms. Ballard's mother was terminally ill?

A. Yes.

Q. Okay. And was it your understanding at that time that Beverly was planning to travel to Las Vegas with her mother as her mother's primary caregiver?

A. Yes.

Q. Okay. Did you speak to -- I'm sorry if we already covered this. But did you inform Beverly that her request for time off to go to Las Vegas with her

request for time off to take the trip to Las Vegas was denied?

A. I didn't talk to her on January 17th. That's when she was a no show, no call for that CAM.

Q. Okay. I'm sorry. When did you inform her that her request for leave to travel to Las Vegas with her mother was denied?

A. Right after this.

Q. Right after the -- Right after the CAM on January 17th?

A. Yes. I didn't speak to her that day, but I would have spoken to her some -- probably the next week.

Q. Do you remember how many days passed between the January 17, 2008 CAM and the time that you spoke to her and told her that her request for time off to travel to Las Vegas was denied?

A. No, I do not.

Q. You think it was sometime in the next week?

A. Yes.

Q. Okay.

A. And, again, I do recall her saying that she had the tickets.

Q. Okay. Now, did Beverly explain to you how

A. Yes, because that was my first allegation, failed to be present for her assigned duties.
Q. Okay. But did you discuss anything about the Family Medical Leave Act other than what you've already told me --
A. No.
Q. -- at this February 28, 2008 CAM?
A. No.
Q. Okay. Did you reach any conclusions as to the other allegations that were brought against Beverly in the CAM notice that I've marked as Exhibit 10?
A. I don't understand your question.
Q. Did you determine whether Beverly had falsified her time sheet on January 29, 2008?
A. Eric Fisher was at the location and she wasn't there at her starting time.
Q. Okay. So did you determine that that -- that she falsified her attendance record?
A. Yes.
Q. Okay. What about the third allegation?
A. Yes. My notes state that she felt that she signed in for the wrong date.
Q. Did you believe that?

A. No.
Q. Okay. Why not?
A. Another time that Eric Fisher went out there and she wasn't at her location.
Q. Okay. What about the fourth allegation, that she filed to be present for the February 13, 2008 certification swim test?
A. I as an HR manager never went to these Red Cross certifications. Eric Fisher and Janet McDonough were in charge of beaches and pools. Eric came to me and stated that Beverly failed to take the swim test that day.
Q. Did Beverly explain why she didn't take the test?
A. Yes, on my No. 4 CAM notes.
Q. Okay. Was that because she had swimmer's ear?
A. Yes.
Q. And were you able to verify that she did have swimmer's ear?
A. Yes.
Q. Okay. So was that an excusable absence?
A. It would have been, yes.
Q. Now, on the second page of this Exhibit 11,

there's a reference to I-time.

A. Yes.

Q. What is I-time?

A. Injury on duty.

Q. I see. So her February 13, 2008 absence would have been covered by I-time?

A. Yes.

Q. Okay. Other than what you've already told me, do you remember anything else that was discussed during the February 28, 2008 CAM?

A. No.

Q. So on February 28, 2008, your recommendation for discipline was termination; is that correct?

A. That's correct.

Q. Okay. Why did you recommend that Beverly be terminated?

A. Among all the discipline, previous disciplines, written reprimands, this leaving on these dates that weren't authorized for Family Medical Leave, it was my determination for Ms. Ballard to be terminated.

Q. Okay.

A. Everyone has to abide by rules and

**Certification of Health Care Provider**
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

*(When completed, this form goes to the employee, Not to the Department of Labor.)*

OMB No.: 1215-0181
Expires: 09-30-2010

1. Employee's Name

2. Patient's Name *(If different from employee)*

3. Page 4 describes what is meant by a **"serious health condition"** under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check the applicable category.

(1) ______ (2) ______ (3) ______ (4) ______ (5) ______ (6) ______ , or None of the above ______

4. Describe the **medical facts** which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

5. a. State the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present **incapacity**[2] if different):

b. Will it be necessary for the employee to take work only **intermittently** or to **work on a less than full schedule** as a result of the condition (including for treatment described in Item 6 below)?

If yes, give the probable duration:

c. If the condition is a **chronic condition** (condition #4) or **pregnancy**, state whether the patient is presently incapacitated[2] and the likely duration and frequency of **episodes of incapacity**[2]:

[1] Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.

[2] "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.



EXHIBIT
2

Form WH-380
Revised December 1999

CPD BALLARD 0452

6. a. If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments.

If the patient will be absent from work or other daily activities because of treatment on an intermittent or part-time basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

b. If any of these treatments will be provided by another provider of health services (e.g., physical therapist), please state the nature of the treatments:

c. If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (*e.g.*, prescription drugs, physical therapy requiring special equipment):

7. a. If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?

b. If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

c. If neither a. nor b. applies, is it necessary for the employee to be absent from work for treatment?

8. a: If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for transportation?

b. If no, would the employee's presence to provide psychological comfort be beneficial to the patient or assist in the patient's recovery?

c. If the patient will need care only intermittently or on a part-time basis, please indicate the probable duration of this need:

Signature of Health Care Provider

Type of Practice

Address

Telephone Number

Date

**To be completed by the employee needing family leave to care for a family member:**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

Employee Signature

Date

A "Serious Health Condition" means an illness, injury impairment, or physical or mental condition that involves one of the following:

1. Hospital Care

Inpatient care (*i.e.*, an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity[2] or subsequent treatment in connection with or consequent to such inpatient care.

2. Absence Plus Treatment

(a) A period of incapacity[2] of **more than three consecutive calendar days** (including any subsequent treatment or period of incapacity[2] relating to the same condition), that also involves:

(1) **Treatment[3] two or more times** by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or

(2) **Treatment** by a health care provider **on at least one occasion** which results in a **regimen of continuing treatment[4]** under the supervision of the health care provider.

3. Pregnancy

Any period of incapacity due to **pregnancy**, or for **prenatal care**.

4. Chronic Conditions Requiring Treatments

**A chronic condition which:**

(1) Requires **periodic visits** for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

(2) Continues over an **extended period of time** (including recurring episodes of a single underlying condition); and

(3) May cause **episodic** rather than a continuing period of incapacity[2] (*e.g.*, asthma, diabetes, epilepsy, etc.).

5. Permanent/Long-term Conditions Requiring Supervision

A period of **Incapacity[2]** which is **permanent or long-term** due to a condition for which treatment may not be effective. The employee or family member must be **under the continuing supervision of, but need not be receiving active treatment by, a health care provider.** Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

6. Multiple Treatments (Non-Chronic Conditions)

Any period of absence to receive **multiple treatments** (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for **restorative surgery** after an accident or other injury, or for a condition that **would likely result in a period of Incapacity[2] of more than three consecutive calendar days in the absence of medical intervention or treatment**, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), and kidney disease (dialysis).

This optional form may be used by employees to satisfy a mandatory requirement to furnish a medical certification (when requested) from a health care provider, including second or third opinions and recertification (29 CFR 825.306).

*Note:* Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

---

[3] Treatment includes examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations.

[4] A regimen of continuing treatment includes, for example, a course of prescription medication (*e.g.*, an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition. A regimen of treatment does not include the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider.

---

**Public Burden Statement**

We estimate that it will take an average of 20 minutes to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

***DO NOT SEND THE COMPLETED FORM TO THIS OFFICE; IT GOES TO THE EMPLOYEE.***



*U.S. GPO: 2000-461-954/25505

CAM
Beverly Ballard
01-17-08 2:00 p.m.

Present: Charles Harper, SETK 23
May Ann Rowland, HR Mgr.

No Show - No Call

Per Janet: Beverly Ballard (See Attached)
requested a Leave dated 01-15-08
requested Leave without Pay for
01-21-08 - 01-29-08 (8 days)
Leave was Denied.

My Recommendation for Discipline
1 Day Suspension
Not reschedule CAM.

Previous Discipline:

2007 Written Reprimand's (2)
2008 Written Reprimand (1)

EXHIBIT
6

# LEAVE REQUEST FORM

To: [illegible] Date: [illegible]

Employee's Name: [illegible] Dept/Div: [illegible]

Job Title: [illegible] Work Location: [illegible]

Social Security No.: [illegible] Region: [illegible]

**REASON FOR LEAVE:**

( ) Vacation
( ) Compensatory Leave (F-Time)
( ) Personal Day
( ) Sick Leave/Maternity Leave
( ) Administrative Leave
( ) Funeral Leave (AD)
( ) Court Leave (Jury Duty)
( ) Military Leave
( ) Leave Without Pay*
( ) Other*
( ) FMLA (attach required forms)

Explanation, if necessary: [illegible]

**LEAVE REQUESTED:**

From: Date [illegible] Time [illegible] A.M. / P.M. Number of Hours on Leave [illegible]

To: Date [illegible] Time [illegible] A.M. / P.M. Number of Working Days on Leave [illegible]

I recommend that this leave be approved ( ) with pay; I have verified that the above benefit time is available.
I recommend that this leave be approved ( ) without pay.

Time Balance Confirmed By: [illegible] Date: [illegible]

Supervisor's Signature: [illegible] Date: [illegible]

Department/Region Manager's Signature: Date:

*FOR ADMINISTRATIVE LEAVE REQUESTS

General Superintendent and CEO

SOME LEAVES ARE SUBJECT TO APPROV[illegible]

Denied
Not enough benefit time
[illegible] not covered.

EXHIBIT
7

CPD BALLARD 11[illegible]

1/15/2008

Dear J. Fisher

Am Instructor Ballard From Ridge Park Pool is asking For time off Due that my Mother Sarah Ballard where grant a trip to Las Vegas From Jan. 21. 28. 2008. The Fairgodmother foundating granting my mother her wish to Las Vegas! From my Mother Sarah Ballard + Instructor Ballard would like to to Thankyou in advance.

P.S.

If you have any questions or needaddition Information please contact Lindsay Prombaum, Wish Granting Coordinator at 312.573-0028 x 21 or Ballard at 773.876.8743

EXHIBIT 8

CPD BALLARD 1182

fairygodmother FOUNDATION®

December 19, 2007

Ms. Sarah Ballard
11829 South Ashland
Chicago, IL 60643

Dear Ms. Ballard:

Fairygodmother Foundation is looking forward to granting your wish! I am sending you a copy of the wish agreement that you and I have signed. This paperwork is for your records; you do not need to reply. Please note that Fairygodmother Foundation's guidelines state that our wish recipients have not previously received a wish from any wish-granting organization. If you have worked with any other wish-granting agency, or if you begin to do so, please notify Fairygodmother Foundation immediately.

Please take the time to review the signed wish agreement, especially the parts that I have highlighted. As requested, Fairygodmother Foundation will be happy to assist you as best as we can.

**Wish Requested:** A trip to Las Vegas. Fairygodmother Foundation will provide roundtrip airfare for you as well as for your daughter, Beverly. We will also provide hotel accommodations, 2-3 meals, transportation to and from Midway Airport, and a wheelchair rental.

**Please Note:** Fairygodmother Foundation will attempt to obtain, but cannot guarantee, tickets to any show in Las Vegas. If a need for oxygen arises before or during the wish trip, it must be arranged by the wish recipient.

All solicitations for money, hotel stays, travel expenses, meals, and other goods and services must be made through Fairygodmother Foundation.

If you have any questions or need additional information, please contact Lindsay Prombaum, Wish Granting Coordinator, at 312.573.0028 x21.

Sincerely,

Ms. Stevie Ball
Chief Executive Officer

EXHIBIT
9

chicago park district

Administration Office
541 North Fairbanks
Chicago, Illinois 60611
t (312) 742-PLAY
(312) 747-2001 TTY
www.chicagoparkdistrict.com

Board of Commissioners
Gery J. Chico
*President*

Bob Pickens
*Vice President*

Dr. Margaret T. Burroughs
M. Laird Koldyke
Reverend Daniel Matos-Real
Cindy Mitchell
Rouhy J. Shalabi

General Superintendent
& CEO
Timothy J. Mitchell

City of Chicago
Richard M. Daley
*Mayor*

**CHICAGO PARK DISTRICT**
**CORRECTIVE ACTION MEETING NOTICE**

JOB TITLE: Natatorium Instructor (H) EMPLOYEE NUMBER: 102136

WORK LOCATION: Ridge Park UNION: SEIU-Local 73

DATE: February 14, 2008

**REVISED:**

TO: Beverly Ballard
11829 S. Ashland Avenue
Chicago, IL 60643

You are hereby directed to be in attendance at a Corrective Action Meeting that was **scheduled for Thursday, February 28, 2008 at 2:00pm.**

This meeting will take place at **THE CHICAGO PARK DISTRICT, ADMINISTRATION OFFICE, 541 N. FAIRBANKS, CHICAGO, IL 60611, 4TH FLOOR** and will concern the following allegation(s):

* 1. Failure to be present for duty at assigned time and place with proper authorization to be absent on January 21, 22, 23, 24, and 27, 2008.

2. Falsification of a daily attendance record on January 29, 2008.

3. Failure to comply with the policies and procedures of the Chicago Park District and the written policies of your department or unit on January 19, 2008.

4. Failed to be present for your American Red Cross certification swim test on Wednesday, February 13, 2008.

You are entitled to Union Representative at this meeting. You will be given a chance to present your explanation of the allegation made against you.

Upon a showing of good cause, the Union or the employee may request an extension of not more than three (3) business days.

DEPARTMENT/DIVISION HEAD: Randy Ernst

cc: Mary Ann Rowland, Human Resources Manager (mar)
Janet McDonough, Beaches & Pools Manager
Derrick Smith, Counsel
Union, SEIU-Local 73

EXHIBIT 10

CHICAGO PARK DISTRICT come out and play

Printed on recycled paper with soy ink

Certification of Health Care Provider
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

*(When completed, this form goes to the employee,* ***Not to the Department of Labor.****)*

OMB No.: 1215-0181
Expires: 09-30-2010

| 1. Employee's Name | 2. Patient's Name *(If different from employee)* |
|---|---|
| Beverly Ballard | Sarah Ballard |

3. Page 4 describes what is meant by a **"serious health condition"** under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check the applicable category.

(1) ______ (2) ______ (3) ______ (4) ______ (5) X (6) ______ , or None of the above ______

4. Describe the **medical facts** which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

Pt is terminally ill; diagnosis of End-Stage CHF
Pt also has a past medical history of diabetes, hypertension, & coronary artery disease (has pacemaker)

5. a. State the approximate **date** the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present **incapacity**[2] if different):

Pt was diagnosed in early 2006, & referred for home hospice services in April, 2006. Anticipated duration of illness is 6 months or less, as pt is terminal

b. Will it be necessary for the employee to take work only **intermittently or to work on a less than full schedule** as a result of the condition (including for treatment described in Item 6 below)?

Employee may need to work intermittently in order to meet needs of pt. Pt's care needs will not always be predictable.

If yes, give the probable duration:

At this time, anticipated duration is 6 months or less; Pt's condition is re-evaluated every 2 months

c. If the condition is a **chronic condition** (condition #4) or **pregnancy**, state whether the patient is presently incapacitated[2] and the likely duration and frequency of **episodes of incapacity**[2]:

N/A

[1] and elsewhere on this form, the information sought relates **only** to the condition for which the employee is taking FMLA leave.

[2] "ity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health treatment therefor, or recovery therefrom.



EXHIBIT
19

Form WH-380
Revised December 1999

6. a. If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments.

No treatments being provided - palliative care services only being provided by Horizon Hospice. Comfort care & symptom management being emphasized at this time.

If the patient will be absent from work or other daily activities because of treatment on an **intermittent** or **part-time** basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

N/A

b. If any of these treatments will be provided by **another provider of health services** (e.g., physical therapist), please state the nature of the treatments:

N/A

c. **If a regimen of continuing treatment** by the patient is required under your supervision, provide a general description of such regimen (*e.g.*, prescription drugs, physical therapy requiring special equipment):

N/A

7. a. If medical leave is required for the employee's **absence** from **work** because of the **employee's own condition** (including absences due to pregnancy or a chronic condition), is the employee **unable to perform** work of any kind?

N/A

b. If able to perform some work, is the employee **unable to perform** any **one or more of the essential functions of the employee's job** (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

N/A

c. If neither a. nor b. applies, is it necessary for the employee to be **absent from work for treatment?**

N/A

8. a. If leave is required to **care for a family member** of the employee with a serious health condition, does the patient **require assistance** for basic medical or personal needs or safety, or for transportation?

Pt does rely on employee for basic medical & personal needs. Employee is pt's only ~~surviving~~ surviving child & is responsible for meeting pt's care needs.

b. If no, would the employee's presence to provide **psychological comfort** be beneficial to the patient or assist in the patient's recovery?

N/A

c. If the patient will need care only **intermittently** or on a part-time basis, please indicate the probable **duration** of this need:

Pt's needs for care assistance will last the duration of her life, & needs will increase as her condition declines.

(signature) (Dr. M. Marschke, MD)
Signature of Health Care Provider

Horizon Hospice
Type of Practice

833 W. Chicago Ave
Address
Chicago, IL 60622

(312) 733-8900
Telephone Number

3/13/2008
Date

**To be completed by the employee needing family leave to care for a family member:**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

(signature)
Employee Signature

3/13/08
Date

# Notice of Rights and Responsibilities
# Family and Medical Leave Act of 1993

*Information*

The Chicago Park District shall grant up to twelve weeks of job protected leave within a twelve-month period to an eligible employee for one or more of the following reasons:

- The birth and care of the employee's child (expires 12 months after delivery).
- The placement of a child with the employee for adoption or foster care (expires 12 months after placement).
- The care of the employee's spouse, son, daughter, or parent, who has a serious health condition.
- A serious health condition that makes the employee unable to perform his or her job.

To be eligible for FMLA, an employee must have worked for the Chicago Park District at least twelve (12) months and worked at least 1,250 hours in the prior 12 months. Time is calculated on actual time worked, not time paid but not worked, nor unpaid time.

Leave taken to care for a newborn or newly placed child must be taken continuously, unless otherwise agreed to by the Chicago Park District, in which case leave may be taken in increments of one full work day. Married couples, both employed by the Chicago Park District, will be entitled to a combined total of twelve (12) weeks to care for a newborn or newly placed child.

The Chicago Park District will exercise its right to designate time off due to injury on or off duty or sickness as FMLA and will deduct that time from the employee's 12-week entitlement.

All benefit time must be used prior to placement on an unpaid status.

The Chicago Park District will maintain the employee's health coverage as if the employee was continuously in service for the duration of the leave. An employee who is making necessary health insurance payments prior to the leave must continue to make such payments while on leave or authorize appropriate payroll deductions upon return.

The Chicago Park District requires all employees on an FMLA Leave for longer than 30 days to return property/equipment belonging to the Chicago Park District on the day before the effective day of leave.

Engagement in any occupation or other employment while on FMLA Leave without the express written consent of the Chicago Park District may result in termination. Employees must follow applicable secondary employment procedures.

No employee shall be disciplined for taking an approved FMLA Leave. The Chicago Park District may discipline an employee for failing to comply with the requirements and/or intent of the FMLA, abuse of FMLA Leave, and/or any other violation of Chicago Park District rules.

EXHIBIT 2021

Eric Fisher Dep. 11 Ex. 21

# Notice of Rights and Responsibilities
# Family and Medical Leave Act of 1993

## *Procedures*

An employee must notify his/her immediate supervisor of the need for a Family Medical Leave of Absence (FMLA). The employee must complete an FMLA Acknowledgment of Responsibilities and submit the form along with appropriate documentation to request and obtain approval for an FMLA Leave. The employee must submit to the Human Resources Department, the Medical Certificate within fifteen (15) calendar days of the employee's receipt of the Acknowledgement.

The employee must provide notice of his/her intended FMLA Leave or need to be off for an FMLA qualifying reason as soon as possible. When leave is foreseeable, the employee must give at least 30 days advance notice and complete the FMLA Ackowledgment. If a 30-day notice is not possible, then the employee must provide notice and complete the FMLA Acknowledgment as soon as practicable (i.e., usually within one or two business days from when the need for the leave becomes known to the employee). Failure to provide notice and complete the Acknowledgment as required, may result in delay of approval and/or discipline.

Documentation required (i.e. Birth Certificate, Certificate legal record of placement, and/or completed Medical Certificate) must be submitted to the Human Resources Department within 15 days of receipt. Failure to comply with the timely submittal of documentation may result in denial of FMLA Leave and/or discipline.

Any employee returning from FMLA Leave for his or her own illness must obtain a release to return to work from his or her own physician.

Upon return from FMLA Leave, the employee shall be restored to his or her original position or an equivalent position with equivalent pay, benefits, and other employment terms. However, a key employee, in the top ten percent (10%) of all salaried Chicago Park District employees, may be denied restoration if necessary to avoid substantial and grievous injury to the Chicago Park District.

An employee has no greater right to reinstatement than if the employee has been continuously employed during the FMLA period.

*Contact the Human Resources Department should you have any questions.*

# Chicago Park District
## Acknowledgment of Responsibilities

TO: (Employee Name) ______________________________

SCI NUMBER: ______________________________

FROM: (Region HR Manager) ______________________________

DATE: ______________________________

RE: Request for FMLA Leave

---

The Chicago Park District has received notice that you are requesting permission to take leave or has become aware that you have been absent for a family and/or medical reason. Attached is a copy of the Park District's Notice of Rights and Responsibilities under the Family and Medical Leave Act (FMLA) explaining your rights and responsibilities prior to, during and after your leave. Your leave has been designated as FMLA leave. However, the designation as FMLA leave will become null and void if you do not submit the required documentation or the Chicago Park District determines that your leave does not qualify as FMLA leave. In particular, note the following responsibilities.

1. **Leave Request** - You must complete the Leave Request application and present it to your Immediate Supervisor within two (2) business days from your receipt of this memorandum.

2. **Supporting Documentation** – You must submit the information requested in the items checked below by ______________. (If not otherwise specified, fifteen (15) days from the date of your receipt of this Acknowledgment of Responsibilities). Your leave may be delayed until you submit the information requested.

______________ For birth of Employee's child, submit a copy of the birth certificate or other official hospital documentation of the birth to your Region Human Resources Manager.

______________ For placement of a child with Employee for adoption or foster care, submit certified legal record of placement to your Region Human Resources Manager.

__________ For Care of the Employee's spouse, son, daughter, or parent with a serious health condition, submit a Medical Certificate to the Medical Division, Department of Risk Management.

__________ For intermittent or continuous leave or to care for Employee's own serious health condition, submit a Medical Certificate to the Medical Division, Department of Risk Management.

You will be asked to re-certify your medical condition or intent to return to work every forty-five (45) days. However, THE CHICAGO PARK DISTRICT RESERVES THE RIGHT TO REQUEST RE-CERTIFICATION OF THE MEDICAL CONDITION OR ADDITIONAL MEDICAL OPINIONS AS IT DEEMS NECESSARY. ALL EMPLOYEES ABSENT FOR FIVE (5) OR MORE CONSECUTIVE DAYS MUST BRING EVIDENCE FROM THEIR PHYSICIAN OF THEIR FITNESS TO RETURN TO DUTY TO THE MEDICAL DIVISION, DEPARTMENT OF RISK MANAGEMENT.

3. **Maintenance of Health Insurance Coverage** – The Chicago Park District will maintain your health insurance coverage as if you were continuously in service for the duration of your approved FMLA leave. If you fail to return from leave for a reason other than the continuation, recurrence, or onset of a serious medical condition, or other circumstances beyond your control, your hereby agree to pay the Chicago Park District health insurance premiums paid on your behalf.

4. **Other Payroll Deductions** – Voluntary payroll deductions for additional life insurance, cancer insurance, tuition deduction, savings bond purchases, credit union payments, charity contributions, or deferred compensation will be suspended during your leave while you are on a non-pay status.

5. **Return to Work** – You are required to notify your Region Human Resources Manager at least two (2) business days before you return to work. You have the right to return to the same or an equivalent position with the same pay, benefits, and terms and conditions of employment upon your return from leave.

6. **Extension of Leave** – You may apply for an extension of your leave pursuant to the Park District's Personnel Code or the applicable collective bargaining agreement by completing a Leave Request and submitting it to your Region Human Resources Manager.

NO EMPLOYEE SHALL BE DISCIPLINED FOR TAKING AN APPROVE FMLA LEAVE. HOWEVER, THE CHICAGO PARK DISTRICT MAY DISCIPLINE AN EMPLOYEE FOR FAILING TO COMPLY WITH THE REQUIREMENTS AND/OR

INTENT OF THE FMLA, ABUSE OF FMLA LEAVE, AND ANY OTHER VIOLATION OF CHICAGO PARK DISTRICT RULES AND PROCEDURES.

The Chicago Park District policy on Secondary Employment applies while an Employee is on FMLA leave. Engaging in any occupation or employment while on FMLA leave without the prior notice and approval by the Chicago Park District may result in discipline including termination of employment.

If you have any questions regarding your rights or responsibilities while on FMLA leave, you may contact your Region Human Resources Manager.

I CERTIFY THAT I HAVE RECEIVED, UNDERSTAND AND AGREE TO COMPLY WITH THE OBLIGATION STATED IN THIS ACKNOWLEDGMENT OR RESPONSIBILITIES AND THE ATTACHED NOTICE OF RIGHTS AND RESPONSIBILITIES

Employee's Signature

Date

Word:fmlackn
Revised 6/00

# Chicago Park District Medical Certificate
## (Family & Medical Leave Act of 1993)

**Part A.** *(To be filled out by the employee)*

Employee's Name ______________________ ID. No. ______________________

Home Address ______________________ Phone ______________________

Position ______________________ Work Location ______________________

Patient's Name *(If other than employee, indicate relationship.)* ______________________

*If requested leave is to care for a seriously ill spouse, parent, son or daughter, please describe the nature, schedule and duration of the care you will provide:*

I hereby give the Chicago Park District Risk Management Department permission to contact my Health Care Provider to clarify and authenticate this certificate. In addition, I certify that the above information is true and correct.

Employee's signature ______________________ Date ______________________

**Part B.** *(To be filled out by Physician, Practitioner or other Health Care Provider.)*

**EMPLOYEE IS PATIENT:** *(Complete Part C if patient is not the Employee.)*

Diagnosis ______________________

______________________

Date condition commenced ______________________ Probable duration of condition ______________________

*Regimen of treatment prescribed including number of scheduled visits and general nature of treatment.*

In your best medical opinion, is it **medically necessary** for the employee to leave work on a intermittent basis or work a reduced schedule? If so, please explain your conclusion and indicate the expected duration of the employee's intermittent or reduced schedule.

Check Yes or No on the lines below, as appropriate:

Is inpatient hospitalization of the employee required? ________ Yes ________ No

Is the employee able to perform the functions of his/her position? ________ Yes ________ No

*(Please review the attached job description or statement of the employee's essential job functions, or if neither is attached, please discuss with the employee his/her job duties before answering this question.)*

**Part C.** *(To be filled out by Physician, Practitioner or other Health Care Provider.)*

**PATIENT IS A SPOUSE, PARENT, SON OR DAUGHTER OF EMPLOYEE:**

Diagnosis ________________________________________

________________________________________

Date condition commenced ________________ Probable duration of condition ________________

Is inpatient hospitalization of the patient required? ________ Yes ________ No

Does (or will) the patient require employee's assistance for basic medical, hygiene, nutritional needs, safety or transportation?

________ Yes ________ No

*(If yes, please detail the type of care, specific days or hours of care, and other assistance required.)*

Type of Assistance ________________________________________

________________________________________

________________________________________

Days/hours of Assistance ________________________________________

________________________________________

________________________________________

Additional Information ________________________________________

________________________________________

________________________________________

Estimate of period of time the employee will need to care for the patient ________________

________________________________________

________________________________________

**Part D.** *(To be filled out by physician, Practitioner or other Health Care Provider.)*

Signature of Physician ______________________ Date ______________

Physician's License Number ______________________

Print Name of Physician ______________________

Field of Medical Practice/Specialty ______________________

Address ______________________

Telephone Number ______________________

---

Signature of Practitioner and/or Health Care Provider ______________________ Date ______________

License Number (if any) ______________________

Print Name ______________________

Field of Medical Practice/Specialty ______________________

Address ______________________

Telephone Number ______________________