**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BEVERLY BALLARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **10 C 1740** |
| | ) | |
| **CHICAGO PARK DISTRICT,** | ) | **Judge Edmond E. Chang** |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, Beverly Ballard, through her attorneys, The Law Offices of Eugene K. Hollander, and for her Memorandum In Opposition to Defendant's Motion for Summary Judgment, states as follows:

## I. INTRODUCTION

### A. Factual Background

*i. Plaintiff Was the Primary Caregiver for Her Terminally Ill Mother*

Plaintiff's Mother, Sarah Ballard, was diagnosed with Congestive Heart Failure on April 26, 2006. (AF[1] 1). Sarah Ballard lived with Plaintiff and received hospice services from Horizon Hospice & Palliative Care at Plaintiff's home. (AF 1). Plaintiff was her mother's primary caregiver. (AF 2-3). Plaintiff's care giving responsibilities included preparing healthy meals, giving her mother insulin shots, administering medicine, operating a pump to remove fluids from her mother's heart, bathing her mother, pushing her mother in her wheelchair, helping her mother walk, giving her mother oxygen when she needed it, providing her mother with transportation, including transportation to the hospital if necessary, making sure her mother was comfortable, saying soothing things to her, making her feel good by, for instance, rubbing her head and back and propping her up in bed with pillows, and otherwise acting as her nurse. (AF 3).

*ii. Plaintiff Notified the Park District of Her Care Giving Responsibilities*

Eric Fischer was and is the Assistant Manager of Beaches and Pools and had

[1] Citations to the Plaintiff's L.R. 56.1(b) Statement of Addition Facts are indicated by "AF" followed by the paragraph number.

supervisory authority over Plaintiff. (AF 4). Fischer reviewed the timesheets of all Natatorium Instructors. (AF 5). Employees were allowed to submit their Leave Requests with their time sheets. (AF 8). Fischer's standard procedure if he found FMLA paperwork mixed in with timesheets would be to forward it to Human Resources. (AF 8).

In March 2007, Sarah Ballard's physician, Lisa Shives, filled out a Certification of Health Care Provider form, which certified that Plaintiff was her mother's primary caregiver. (AF 10). The Certification of Healthcare Provider form stated, in pertinent part, "Patient [Sarah Ballard] does require assistance from others, and employee [Beverly Ballard] is the primary person supporting patient. Patient relies on employee for safety needs and transportation. Needs for personal care and medical care are expected to increase in the coming months as patient declines." (AF 10). The Certification of Healthcare Provider also stated that "Psychological comfort care and support is an additional benefit that employee is able to offer patient." (AF 10). In March 2007, Plaintiff submitted the completed Certification of Health Care Provider form along with her payroll documents in the payroll envelope at her supervisor Rachel's direction. (AF 11).

In June 2007, Plaintiff told Eric Fischer that she had FMLA in connection with her mother's illness and that she was her mother's caregiver. (AF 12). On June 17, 2007 and November 13, 2007, Plaintiff submitted letters from Horizon Hospice & Palliative Care that detailed her care giving responsibilities for her mother. (AF 13-14).

It is undisputed that Eric Fischer received the November 13, 2007 Letter from Horizon Hospice & Palliative Care. (AF 14). Eric Fischer read the November 13, 2007 letter sometime in November 2007. (AF 14). Fischer also shared the letter with Janet McDonough, Manager of Beaches and Pools, shortly after November 13, 2007. (AF 14). McDonough read the letter and told Fischer that they had to turn it in to Human Resources. (AF 14). Fischer testified that he believed that McDonough provided the letter to Human Resources. (AF 14). The November 13, 2007 letter from Horizon Hospice & Palliative Care states that "Sarah Ballard is a current patient of Horizon Hospice; she was admitted into our program on April 25, 2006 and has a terminal diagnosis of end-stage CHF." (AF 15). The letter also states that "As a result of her

terminal status, Ms. Ballard does require assistance in caregiving. Beverly and her mother live in the same home, and it is Beverly's responsibility to assist her mother as needed." (AF 15).

*iii. Plaintiff Notified The Park District that She Intended To Use FMLA Leave to Accompany Her Mother on A Trip That Was Granted to Her as a Dying Wish.*

As part of its plan of care in providing hospice services to terminally ill patients, Horizon Hospice & Palliative Care's medical and psychosocial team strives to help patients identify and meet end-of-life goals. (AF 16). During the time that Sarah Ballard was receiving hospice services from Horizon Hospice & Palliative Care, she began to talk with her team members from Horizon Hospice about being able to take a trip with her family members to Las Vegas. (AF 16). After determining that she was medically stable enough to take this trip, Horizon Hospice's social worker was able to identify a foundation, The Fairygodmother Foundation, that would be able to facilitate and fund this trip for Sarah Ballard and Beverly Ballard. (AF 16). The trip took place from January 21, 2008 through January 26, 2008. (AF 16). Plaintiff functioned as the primary caregiver for Sarah Ballard on this trip. (AF 2, 3, 10,16, 32-33).

On December 19, 2007, during a break at an Hourly Instructors' Meeting, Plaintiff told Eric Fischer that her mother had been granted a trip that was to take place in January 2008 and handed the December 19, 2007 Letter from the Fairygodmother Foundation to him. (AF 17). Plaintiff wrote the dates of the Las Vegas trip on the back of the December 19, 2007 Fairygodmother Foundation letter because Fischer wanted to know what dates she was requesting in connection with the trip. (AF 18).

Plaintiff discussed the Family and Medical Leave Act with Fischer on December 19, 2007. (AF 19). Plaintiff wrote "FL" under some of the dates that she listed on the back side of the December 19, 2007 Fairygodmother Foundation letter. (AF 19). Fischer questioned Plaintiff about what "FL" stood for, and she told him that "FL" was her shorthand for "family and FMLA." (AF 19). Fischer asked Plaintiff, "You have FMLA?" (AF 19). Plaintiff responded that she did, and Fischer said "okay" and that he would get back to her. (AF 19). Plaintiff waited until January 15, 2008 to make a written request for leave in connection with the Las Vegas trip because Eric Fischer, during their

December 19, 2007 conversation, said it was too soon, he had a lot to handle, and he would get back with her. (AF 20). At the time that Plaintiff submitted her January 15, 2008 Leave Request, she did not know that she was supposed to submit it to Human Resources. (AF 27). It was Plaintiff's understanding that Eric Fischer, as a manager, was the one who handled her time and gave permission to go on leave. (AF 27). Although Defendant claims that Eric Fischer and Janet McDonough did not have authority to approve FMLA leave requests, the Leave Request form that Beaches and Pools employees routinely submitted to Fischer has an option to request FMLA leave. (AF 26).

*iv. Defendant Fails to Advise Plaintiff of Her FMLA Rights And Terminates Her In Violation of the FMLA*

In 2007, Eric Fischer was aware of the Family and Medical Leave Act, but he "was not too clear about it." (AF 23). Mr. Fischer never had any training on the FMLA. (AF 23). Until approximately March 2010, Mr. Fischer did not know the procedure an employee had to follow to request FMLA leave. (AF 23). Mr. Fischer did not know that the FMLA allowed an employee to take intermittent leave of absence until around March 2010. (AF 23).

Rebecca Reierson has been the Director of Human Resources for the Chicago Park District since November 2006. (AF 24). According to Ms. Reierson's testimony, if an employee notifies her supervisor that she needs time off to care for a family member who has a serious health condition, the supervisor is obligated to refer the matter to Human Resources so that the Park District can provide the appropriate paperwork to the employee. (AF 24).

From January 14, 2008 through January 18, 2008 (the Friday before her Monday, January 21st departure to Las Vegas with her mother) Plaintiff tried numerous times to contact Eric Fischer about her trip, as she had not heard back from him. (AF 25, 26, 28). However, Fischer refused to speak with her, and Plaintiff was only able to speak with Fishcer's Secretary, Erica. (Id.) Although Erica did not make a specific request for Plaintiff's FMLA Certification, Plaintiff delivered her completed March 2007 Certification of Healthcare Provider Form to the administration building on January 17, 2008 and left it on Erica's desk around 8:30 or 8:45 a.m. (AF 29). On January 18, 2008,

Erica informed Plaintiff that she was giving Fischer her messages. (AF 28). Prior to her trip, Fischer did not call Plaintiff back. (AF 28, 30). Although Plaintiff had not received formal approval of her request for leave to travel with her mother, she believed that her FMLA leave would be approved based on her conversations with Erica, who had told her that if she got her paperwork in order, she should be fine. (AF 31).

On January 17th or 18th, 2008, Sarah Ballard's doctor gave Plaintiff instructions on how to care for her mother while they were in Las Vegas. (AF 32). During the trip to Las Vegas, Plaintiff administered her mother's medications and otherwise acted as her nurse. (AF 2, 3, 10,16, 32-33). Plaintiff returned to work on January 28, 2008. (AF 34). Plaintiff was supposed to return to work on January 27, 2008, but because of a fire in her hotel in Las Vegas on January 26, 2008, she was unable to leave Las Vegas on January 26, 2008 as originally scheduled. (AF 34). Fischer testified that, if an employee provided appropriate documentation of a fire at her hotel that prevented her from returning to work on time, that would be an excusable absence. (AF 35).

Human Resources Manager Mary Ann Rowland reported to Rebecca Reierson. (AF 36). On January 17, 2008, Ms. Rowland received Plaintiff's January 15, 2008 Leave Request form from Janet McDonough and Eric Fischer. (AF 37). At the time she reviewed the Leave Request on January 17, 2008, Ms. Rowland knew that Plaintiff was seeking to travel to Las Vegas with her mother, that her mother was terminally ill, and that Plaintiff was planning to travel with her mother to Las Vegas as her primary caregiver. (AF 37). Ms. Rowland understood that the Fairygodmother Foundation was an organization similar to the Make-A-Wish Foundation. (AF 37). On January 17, 2008, Ms. Rowland claims that she made a determination that Plaintiff's request was not covered under the FMLA. (AF 37). Mary Ann Rowland testified that she instructed Plaintiff to submit FMLA paperwork prior to the Las Vegas trip. (AF 38). However, Plaintiff had never spoken with Rowland prior to the trip to Las Vegas. (AF 38).

Plaintiff was terminated on March 21, 2008 for her absences on January 21st, 22nd, 23rd, 24th, and 27th of 2008, which the Park District alleged were unauthorized. (AF 39). Rebecca Reierson, the Director of Human Resources, made the final decision to terminate Plaintiff. (AF 39). Reierson relied on a recommendation from Human Resources Manager Mary Ann Rowland. (AF 39).

**B. Legal Standard for FMLA Interference Claims**

"To prevail on an FMLA-interference claim, an employee must demonstrate that: (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was entitled." Brown v. Auto Components Holding, LLC, 622 F.3d 685, 689 (7th Cir. 2010). In the instant case, it is undisputed that Plaintiff met the general eligibility requirements for FMLA protection and that the Park District was covered by the FMLA. The Defendant argues that the Plaintiff's trip to Las Vegas to accompany her terminally ill mother on a trip granted to her by an organization similar to the Make-A-Wish Foundation was not covered by the FMLA. Additionally, the Defendant claims that Plaintiff did not provide adequate notice of her need for FMLA leave. For the following reasons, Defendant's arguments must be rejected.

**II. ARGUMENT**

**A. Legal Standard for Summary Judgment**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996).

**B. Plaintiff's Trip to Las Vegas Was Protected Under the FMLA**

*i. The Las Vegas Trip, Arranged in Connection with Sarah Ballard's Hospice Services, Clearly Falls Within the Scope of FMLA Protected Leave.*

The U.S. Department of Labor's regulations define the situations that constitute "caring for" a family member under the FMLA. The regulations provide, in part, "It includes situations where, for example, because of a serious health condition, the family

member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor, etc." 29 C.F.R. § 825.116(a). "The term also includes psychological comfort and reassurance which would be beneficial to a…parent with a serious health condition who is receiving inpatient or home care." Id.

The legislative history of the FMLA provides, in part:

> An employee could also take leave to care for a parent or spouse of any age who is unable to care for his or her own basic hygienic or nutritional needs or safety. Examples include a parent or spouse whose daily living activities are impaired by such conditions as Alzheimer's disease, stroke, or clinical depression or who is recovering from major surgery or who is in the final stages of a terminal illness.

S. Rep. No. 103-3, at 24 (1993) (emphasis added).

Plaintiff's trip to Las Vegas as her mother's caregiver was arranged in connection with the hospice services provided to Sarah Ballard by Horizon Hospice & Palliative Care. (AF 16). Indeed, "as part of its plan of care in providing hospice services to terminally ill patients, Horizon Hospice & Palliative Care's medical and psychosocial team strives to help patients identify and meet end-of-life goals." (AF 16). Sarah Ballard's end of life goal was to travel to Las Vegas with her daughter. (AF 16). There is no dispute that Plaintiff was her mother's primary caregiver, and that in addition to physical care, she provided her mother with "psychological comfort and reassurance which would be beneficial to a…parent with a serious health condition who is receiving inpatient or home care." See 29 C.F.R. §825.116(a). (AF 2, 3, 10,16, 32-33).

The legislative history notes that the phrase "to care for" "is intended to be read broadly to include both physical and psychological care." S. Rep. No. 103-3, at 24 (1993). The legislative history also makes it very clear that the psychological care referenced therein is not limited to treatment by a psychologist. The legislative history explains that "parents provide far greater psychological comfort and reassurance to a seriously ill child than others not so closely tied to the child. In some cases there is no one other than the child's parents to care for the child. The same is often true for adults caring for a seriously ill parent or spouse." Id. A reasonable jury could certainly conclude that the trip conferred emotional benefits to Plaintiff's mother during the time

that she was facing a terminal illness.

The legislative history provides that "an employee could take leave to care for a parent who…is in a hospital or other health care facility. An employee could also take leave to care for a parent…who is unable to care for his or her own basic hygienic or nutritional needs or safety." Id. (emphasis added). Clearly, protected leave is not limited to situations where the individual needing care is receiving medical care in a hospital or other health care facility.

The legislative history of the FMLA provides that an employee's care for a parent suffering from a terminal illness is covered under the FMLA. Treatment from a medical provider may not provide any benefits to a terminally ill individual. However, such an individual would still need his or her basic needs addressed by a caregiver such as Plaintiff. The trip to Las Vegas was arranged in connection with the hospice care that Plaintiff's mother was receiving (AF 16). Clearly, the trip to Las Vegas fell within the scope of the FMLA's protection.

*ii. The cases cited by Defendant in support of its argument that Plaintiff did not "care for" her mother are distinguishable or unpersuasive*

None of the cases cited by Defendant involve a situation where the plaintiff sought time under the FMLA to care for a family member who was terminally ill. The court in Marchisceck v. San Mateo County, 199 F.3d 1068, 1071, 1075 (9th Cir.1999) based its holding on the fact that the plaintiff did not participate in the ongoing treatment of her son's medical condition but instead took him to the Phillipines so that he could avoid being beaten by certain acquaintances. The court stated that "the relevant administrative rule, 29 C.F.R. § 825.116, suggests that 'caring for' a child with a 'serious health condition' involves some level of participation in ongoing treatment of that condition." (emphasis added). Id. at 1076. 29 C.F.R. § 825.124(a) does not actually state that the employee taking FMLA leave to care for a family member must participate in the treatment of the family member's serious health condition. Neverthless, Plaintiff did provide medical care to her mother during the trip to Las Vegas. (AF 32-33). Therefore, even though the primary purpose of the trip was not to seek medical treatment, Plaintiff's act of accompanying her mother to Las Vegas is distinguishable from the "care" at issue in Marchisheck. Furthermore, the court in Marchisheck noted that "there

is *no evidence whatsoever* in the record that [the plaintiff's son] suffered any period of incapacity - inability to perform regular daily activities - as a result of his behavioral problems." Id. at 1075. In the instant case, it is undisputed that the Plaintiff's mother was suffering from a terminal illness and needed someone to provide care for her. (AF 1, 2, 3, 10, 13, 14, 15, 16, 32-33).

Defendant also cites Tellis v. Alaska Airlines, a 9th Circuit case in which the Plaintiff sought FMLA so that he could take a cross country trip to retrieve a family vehicle while his wife was experiencing difficulties with her pregnancy. Tellis v. Alaska Airlines, 414 F.3d 1045, 1046 (9th Cir. 2005). Notably, his wife did not accompany him on the trip. Id. Clearly, Tellis is distinguishable from the instant case, as Plaintiff accompanied her mother on the Las Vegas trip and cared for her.

Defendant also cites Leakan v. Highland Co., a case that is readily distinguishable from the facts of the instant case. Unlike the situation in Leakan v. Highland Co. (E.D. Mich. 1997), in which the plaintiff attempted to use her recent pregnancy to support an FMLA leave to visit her in-laws, Ballard was not using her mother's illness as an excuse to take a vacation. In Leakan, the Plaintiff took a vacation and attempted to construe it as FMLA leave because she just happened to bring her newborn with her. Leakan v. Highland Co., 1997 U.S. Dist. LEXIS 20381, *10 (E.D. Mich. 1997). In contrast, Plaintiff's mother was fortunate enough to receive a dying wish to travel to Las Vegas with her daughter from a charitable foundation. In addition to the psychological benefits of having her daughter present with her on the trip, Plaintiff's mother also needed her daughter to act as her primary caregiver during the trip.

Although Tayag v. Lahey Clinic Hospital, Bhd. Of Maint. Of Way Employees, and Gradilla v. Ruskin Mfg. do stand for the proposition that vacations are not covered under the FMLA, Plaintiff's trip with her mother to Las Vegas was not a mere vacation. It was a trip that would allow a terminally ill woman to realize an end of life goal, and share it with a close family member. It is unlikely that Congress intended to foreclose such a leave of absence. Furthermore, the Seventh Circuit has not weighed in on this issue. The cases cited by Defendant are all from other jurisdictions, with the exception of Bhd. Of Maint Of. Way Employees, a Northern District of Illinois case. However, Bhd. Of Maint. Of Way is factually distinct from the case at bar. There, the dispute centered

around whether the defendant rail carriers could (contrary to the terms of the applicable collective bargaining agreements) substitute unused paid vacation, personal, or sick leave when an employee took leave covered by the FMLA. Bhd. Of Maint. Of Way Employees v. CSX Transp., Inc., 2005 U.S. Dist. Lexis 37950, * 3 (N.D. Ill. 2005).

The trip to Las Vegas was arranged in connection with the hospice care that Plaintiff's mother was receiving. A December 16, 2008 letter signed by the Medical Director and Social Work Coordinator of Horizon Hospice & Palliative Care states that "As part of our agencies [sic] plan of care in providing hospice services to terminally ill patients, our medical and psychosocial team strives to help patients identify and meet end-of-life goals." (AF 16). The letter goes on to reference Plaintiff's mother's trip to Las Vegas and notes that Plaintiff acted as the primary caregiver for her mother. Id. A reasonable jury could certainly conclude that the trip conferred emotional benefits to Plaintiff's mother during the time that she was facing a terminal illness. The phrase "to care for" "is intended to be read broadly to include both physical and psychological care." S. Rep. No. 103-3, at 24.

Defendant cites the concern expressed by the court in Gradilla v. Ruskin Mfg. (9th Cir. 2003) about the problems that could result if caregivers were granted FMLA protection any time their ill family members wanted to travel. While there may be potential for abuse of the FMLA's protection of caregivers, allowing an employee to accompany her terminally ill mother on a trip provided by a charitable foundation as a dying wish simply does not implicate the concerns expressed in Gradilla.

*iii. Plaintiff Cared For Her Mother Within the Meaning of the FMLA*

Defendant argues that Plaintiff did not care for her mother within the meaning of the FMLA during the trip to Las Vegas because her care was not provided under one of the "major circumstances" permitting FMLA leave. However, the FMLA does not distinguish between "major" or "minor" circumstances of permitted leave. Protected leave is protected leave. As discussed, *supra*, "caring for" a family member under the FMLA is not limited to situations where the family member is in a hospital or other health care facility or where the care is provided in connection with inpatient care or periods of home care. In the instant case, Plaintiff provided not only physical and medical care during the Las Vegas trip, but she also provided psychological comfort to

her mother. (AF 1, 2, 3, 10, 13, 14, 15, 16, 32-33). The phrase "to care for" "is intended to be read broadly to include both physical and psychological care." S. Rep. No. 103-3, at 24 (1993).

Defendant cites Tayag v. Lahey Clinic Hosp., 632 F.3d 788 (1st Cir. 2011), for the proposition that the "inclusion of 'psychological comfort and reassurance,' 29 C.F.R. § 825.116, in the definition of care cannot extend to the accompaniment of an ill spouse on lengthy trips unrelated to medical care." However, the situation in the instant case is fundamentally different from Tayag. In Tayag, the employee was not caring for a terminally ill family member. In the case at bar, Plaintiff's mother was terminally ill, and no amount of medical treatment was going to change that. Plaintiff's mother had been diagnosed with end-stage congestive heart failure and had been granted a trip to Las Vegas by the Fairygodmother Foundation, a non-profit charitable organization which granted wishes to individuals facing terminal illness. (AF 16). The FMLA was intended to cover a leave of absence to care for a parent who is in the final stages of a terminal illness. See S. Rep. No. 103-3, at 24 (1993). The trip to Las Vegas was arranged in connection with the hospice services provided to Sarah Ballard. (AF 16). Clearly, the trip to Las Vegas was covered by the FMLA.

**C. Plaintiff Gave More-Than-Sufficient Notice of Her FMLA Qualifying Reason for Leave**

"When requesting unpaid leave, the employee need not mention the FMLA." Stoops v. One Call Communications, Inc., 141 F.3d 309, 312 (7th Cir. 1998), *citing* 29 C.F.R. § 825.303(b). "In fact, the employee can be completely ignorant of the benefits conferred by the Act: it is sufficient notice if the employee provides the employer with enough information to put the employer on notice that FMLA-qualifying leave is needed." Stoops, 141 F.3d at 312. "When an employee provides notice that leave is needed, the employer must investigate further if it needs 'additional information'." Id., *citing* 29 C.F.R. § 825.303(b). "An employer must give notice of a requirement for medical certification each time a certification is required." (emphasis added). Lucterhand v. Granite Microsystems, Inc., 2007 U.S. Dist. Lexis, 15072, * 23 (E.D. Wisc.).

In the instant case, the Plaintiff has presented overwhelming evidence that the Park District was on notice of her plan to travel with her mother to Las Vegas, and that

she would be doing so as her mother's primary caregiver in light of the fact that her mother was terminally ill. (AF 16-19). As such, Defendant was clearly on notice of her need for FMLA leave and was obligated to instruct her as to the FMLA procedures it intended to require her to follow. Defendant failed to do so, and it cannot now prevail on summary judgment by claiming that Plaintiff should have just known what to do.

Defendant first claims that Plaintiff did not give the Park District 30 days notice of her intent to accompany her mother to Las Vegas. In making this argument, Defendant simply ignores Plaintiff's testimony. At the very least, a question of fact exists as to this issue. On December 19, 2007, when Plaintiff showed Eric Fischer the Fairygodmother Letter concerning the Las Vegas trip, she specifically told him that she intended to use FMLA to cover the trip. (AF 17-19). Furthermore, the Park District was well aware, prior to December 19, 2007, that Plaintiff's mother was terminally ill and that Plaintiff was her primary caregiver. (AF 10-15). Not only had Plaintiff submitted a Certification of Health Care Provider form in March 2007 designating her as her mother's primary caregiver, but she also provided letters from Horizon Hospice & Palliative Care which explained her care giving responsibilities on June 17, 2007 and November 13, 2007. (AF 10-15). It is undisputed that both Eric Fischer and Janet McDonough were provided with the November 13, 2007 letter. (AF 14). Additionally, Fischer testified that he believed that Janet McDonough provided the November 13, 2007 to Human Resources Manager Mary Ann Rowland. (AF 14). Ms. McDonough testified that she would have done exactly that. (AF 14).

On December 19, 2007, Fischer told Plaintiff that he would get back to her about the trip. (AF 19-20). Indeed, when Plaintiff told Fischer about her need for FMLA leave, he said that it was **too soon**. (AF 20). Fischer never got back to Plaintiff about the trip, so she submitted a Leave Request Form on January 15, 2008[2] on which she checked the box for FMLA leave[3]. (AF 20, 25-28, 30). According to the testimony of the Park

[2] Notably, Eric Fischer testified that certain types of leaves only require five days' notice, and that he was not aware of any training where Plaintiff was instructed that she had to provide more than five days' notice for a leave. (AF 21).

[3] The Park District claims that Fischer thought Plaintiff was requesting a "regular, non-FMLA leave." However, one look at the copy of the Leave Request demonstrates that Fischer could not have known which box was checked under the heading "Reason for Leave." Janet McDonough's testimony supports this conclusion, as she could not discern which box was checked on the form. (See Plaintiff's Response to

District's Director of Human Resources, if a supervisor is placed on notice that an employee has a qualifying reason for FMLA leave, the supervisor is obligated to refer the matter to Human Resources. (AF 24). However, Fischer apparently never informed Human Resources of Plaintiff's FMLA qualifying condition prior to January 15, 2008, because no one contacted Plaintiff about her request prior to that date or any time prior to the date that she left for Las Vegas. (AF 20, 30, 38). However, even if Fischer had immediately referred the matter to Human Resources Manager Mary Ann Rowland, it would not have made a difference, because Ms. Rowland – with full knowledge that Plaintiff intended to travel to Las Vegas as her terminally ill mother's caregiver on a trip sponsored by an organization similar to the Make-A-Wish Foundation – claimed that the trip was not covered by the FMLA. (AF 37).

If the Park District wanted Plaintiff to follow a certain procedure concerning her request for FMLA leave, it had more than enough notice on December 19, 2007 to so instruct her[4]. "When an employee provides notice that leave is needed, the employer must investigate further if it needs 'additional information'." Stoops, 141 F.3d at 312, *citing* 29 C.F.R. § 825.303(b). However, the Park District has not even argued in its motion that it made a request for Plaintiff to follow any particular procedure concerning the requested time off for her trip to Las Vegas. Rather, Defendant claims that Plaintiff "must be charged with knowledge" of its FMLA procedures. However, as discussed below, the law simply does not support Defendant's argument.

The Defendant claims that Plaintiff should have initially informed the Human Resources Department of her need for FMLA leave in December 2007 and claims that Plaintiff knew that going to Human Resources was the proper procedure because she had submitted FMLA requests in 2004 and 2005. However, the Defendant's reliance on Ms. Ballard's submission of FMLA Requests in 2004 and 2005 is unavailing for two reasons. First, although Defendant argues that Plaintiff had submitted FMLA requests to Human

---

S.F. 25). Furthermore, Plaintiff had told Fischer that she had FMLA to cover the trip back on December 19, 2007. (AF 19).

[4] Additionally, since Plaintiff informed Fischer more than 30 days before her trip started, the Park District had more than enough time to find someone to cover her work location during the trip. (AF 22).

Resources in 2004 and 2005[5], Defendant's argument is based on an inaccurate construction of Plaintiff's testimony. Plaintiff testified that she submitted her prior FMLA requests by placing them in a payroll envelope, and if Human Resources received the documents, it would receive them through the payroll department. (AF 19; Plaintiff's Response to S.F. 16). Indeed, Plaintiff specifically testified that she did not know to submit FMLA Certification Forms to the Human Resources Department. (AF 27).

Second, even if Plaintiff had been aware of and deliberately followed the Park District's FMLA request procedures in the past, her prior compliance is irrelevant to her request for the Las Vegas trip. In Lucterhand v. Granite Microsystems, Inc., et al., 2007 U.S. Dist. Lexis 15072, * 18 (E.D. Wisc.), the defendants argued that, because Lucterhand did not comply with the FMLA procedures in the company's employee handbook, he was not entitled to FMLA leave. Specifically, the defendants argued that "Lucterhand's failure to provide certification from a health care provider in accordance with the associate manual is fatal to his claim." Lucterhand, 2007 U.S. Dist. Lexis at * 18. The court disagreed with the defendants' argument on the ground that the defendant had not specifically asked Lucterhand to submit a certification at or around the time the leave was requested. Id. at *23. The court noted that, under 29 C.F.R. § 825.305(a), "an employer must give notice of a requirement for medical certification each time a certification is required." (emphasis added).

Similarly, in the instant case, the Defendant has not argued that it instructed Plaintiff to submit a Certification of Health Care Provider form **or do anything else**. Rather, the Defendant claims that Plaintiff just should have known what to do, a contention that is especially unpersuasive in light of the fact that **Plaintiff's supervisor, Eric Fischer -- *the Assistant Manager of Beaches and Pools* -- did not even know the procedures for FMLA requests until March 2010.** (AF 23). Although Human Resources Manager Mary Ann Rowland testified that she asked Plaintiff to submit certain FMLA paperwork, Plaintiff denies this. (AF 38). As such, there is at least a question of fact as to whether the Park District instructed Plaintiff to follow a particular procedure in connection with her FMLA request.

[5] Plaintiff's 2005 FMLA paperwork was filled out approximately two years prior to the time she became aware that her mother had been granted a trip to Las Vegas by the Fairygodmother Foundation.

Finally, Defendant's argument that Plaintiff missed two Corrective Action Meetings is a red herring. First, Defendant is simply wrong when it claims that Plaintiff missed the January 3, 2008 Corrective Action Meeting. Mary Ann Rowland testified unequivocally that Plaintiff was present at the meeting. (See Plaintiff's Response to S.F. 29). Second, the Park District does not claim that it terminated Plaintiff because she missed a corrective action meeting. As the Director of Human Resources Rebecca Reierson testified, the sole reason for Plaintiff's termination was the trip to Las Vegas. (AF 39). Furthermore, the Defendant's argument that "employees seeking FMLA leave are expected to cooperate with the employer when the employer has legitimate concerns about the propriety of such a leave request" is misplaced. Defendant has offered no evidence whatsoever that it expressed any concern to Plaintiff about her request for leave prior to the January 17, 2008 Corrective Action Meeting. As such, Defendant's argument that Plaintiff was somehow trying to avoid a confrontation about the propriety of her trip with Mary Ann Rowland at the January 17, 2008 CAM must be rejected.

## III. CONCLUSION

For the foregoing reasons, the Plaintiff, Beverly Ballard, respectfully requests that this Honorable Court deny the Defendant's Motion for Summary Judgment in its entirety.

Respectfully submitted,

Plaintiff,
Beverly Ballard

By: s/ Paul W. Ryan
One of her attorneys

Eugene K. Hollander
Paul W. Ryan
Gina M. Shawver
**The Law Offices of Eugene K. Hollander**
230 W. Monroe, Suite 1900
Chicago, IL 60606
(312) 425-9100

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that he caused copies of the foregoing Plaintiff's Memorandum In Opposition to Defendant's Motion for Summary Judgment to be served upon the following by filing same using the Court's CM/ECF System on this 26th day of May 2011:

Brian J. Flores
Nelson A. Brown, Jr.
CHICAGO PARK DISTRICT
541 N. Fairbanks Ct. 3rd floor
Chicago, IL 60611

s/ Paul W. Ryan